OPINION
MURGUIA, Circuit Judge:
The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year period of limitation within which an individual seeking relief must file an application for a writ of habeas corpus. See 28 U.S.C. § 2244(d)(1). Once that one-year period begins to run, it may be tolled only in certain circumstances. See id. § 2244(d)(2) (providing for statutory tolling); Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 2554, 177 L.Ed.2d 130 (2010) (providing for equitable tolling). The question this case presents is whether Petitioner Margaret Rudin is entitled to statutory or equitable tolling of the AEDPA limitations period, excusing her six-year delay in filing her application. We conclude, albeit not without pause, that she is not entitled to statutory or equitable tolling sufficient to excuse her delay. We therefore affirm the district court’s order dismissing Rudin’s application as untimely.
I. FACTS
The facts giving rise to this appeal are essential to our tolling analysis. We therefore describe those facts in more detail than we otherwise might.

A. Rudin’s Criminal Trial and Direct Appeal Proceedings

In April 1997, Petitioner Margaret Ru-din was charged with murder with the use of a deadly weapon and unauthorized surreptitious intrusion of privacy by listening device, both in violation of Nevada state law. See Nev.Rev.Stat. §§ 200.010; 193.165; 200.650. Those charges arose out of the death of Rudin’s husband Ron, whose charred remains had been discovered in Lake Mojave a few years earlier. See Rudin v. State, 120 Nev. 121, 86 P.3d 572, 577 (2004). After pleading not guilty to both charges, Rudin retained the services of a private attorney, Michael Ama-dor, to represent her at trial. Her trial began in the Eighth Judicial District Court of the State of Nevada (the “trial court” or the “court”) on March 2, 2001.
Two-and-a-half weeks before trial commenced, it became clear to the court that Amador alone could not adequately defend Rudin. After a series of pretrial delays, the court appointed attorney Thomas Pita-ro to assist Amador with Rudin’s defense. Pitaro quickly realized that Amador had not yet reviewed “thousands of pages of discovery,” and Pitaro soon became “concerned about the preparation that had been done for the trial.” Amador had not, for example, interviewed critical witnesses. As a result, the defense team would learn, for the first time at trial, the content of various witnesses’ testimony. In at least one instance, when a witness was called to the stand, Pitaro “went to get from Mr. *1164 Amador the [witness’s] file and found nothing inside.” As Pitaro would later describe, “the preparation that [one] would hope normally would be done before trial starts was being done during the trial.”
But even with Pitaro’s help, Rudin’s trial was replete with alleged errors and professional misconduct on the part of the defense team. Amador, for example, began with an opening statement that had “no cohesive theme.” Over the course of trial, Amador was accused of creating a prejudicial conflict of interest by allegedly negotiating agreements for the literary and media rights to his representation. Rudin, 86 P.3d at 587-88. His general lack of preparation prompted Rudin twice to move for a mistrial, but both of her motions were denied. Id. at 579-80, 585-86. Pitaro, who was appointed after Amador’s opening statement, described the representation as “ ‘a farce, and that disturbs me as an attorney.... This has become a sham, a farce and a mockery.’ ”[1] Id. at 590 (Rose, J., dissenting).
A jury convicted Rudin on both charges. For her conviction for murder with the use of a deadly weapon, the trial court imposed a sentence of life imprisonment with a possibility of parole after twenty years. For her conviction for unauthorized surreptitious intrusion of privacy by a listening device, the court imposed a one-year sentence, to run concurrently with Rudin’s life sentence. Rudin’s judgment of conviction was entered on September 17, 2001.
On April 1, 2004, the Nevada Supreme Court affirmed both of Rudin’s convictions on direct appeal. See Rudin v. State, 120 Nev. 121, 86 P.3d 572 (2004). The court concluded that Amador’s alleged conflict of interest and ineffectiveness, while sufficient to cause “concern,” “must be examined in a separate post-conviction proceeding at which time Rudin’s post-conviction attorney will examine the entire record, interview all relevant witnesses and present the matter to the district court for a full and complete airing and decision.” Id. at 588.[2] The Nevada Supreme Court’s remittitur issued on April 27, 2004, and Rudin did not seek a writ of certiorari from the U.S. Supreme Court. The deadline for her to do so was June 30, 2004.[3]

B. Rudin’s Petitions for Collateral Relief

Around the time that appellate review of Rudin’s judgment of conviction concluded, two statutes of limitation began to run, both relating to her ability to seek collateral review of the errors that she alleged had affected her underlying criminal trial. The first limitations period is defined by state law and requires, except under certain circumstances, that a state-court petition for post-conviction relief be filed within one year of the Nevada Supreme Court issuing its remittitur:
Unless there is good cause shown for delay, a petition that challenges the validity of a judgment or sentence must be filed within 1 year after entry of the judgment of conviction or, if an appeal *1165 has been taken from the judgment, within 1 year after the Supreme Court issues its remittitur. For the purposes of this subsection, good cause for delay exists if the petitioner demonstrates to the satisfaction of the court:
(a) That the delay is not the fault of the petitioner; and
(b) That dismissal of the petition as untimely will unduly prejudice the petitioner.
Nev.Rev.Stat. § 34.726(1). The second limitations period is defined by AEDPA, and it also establishes a one-year deadline for a state prisoner seeking a federal writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The AEDPA limitations period runs from the latest of four specified dates:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date ón which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
Id. The AEDPA limitations period may be tolled if a petitioner “properly file[s]” a petition for post-conviction relief in state court; where that occurs, the limitations period will be tolled for the time during which the state-court petition is pending. Id. § 2244(d)(2).
Thus, from the date on which the Nevada Supreme Court issued its remittitur, which was April 27, 2004, Rudin had one year, or until April 27, 2005, to file a petition for post-conviction relief in state court. And from the date on which the deadline passed for seeking a writ of cer-tiorari from the U.S. Supreme Court, which was June 80, 2004, she had one year, or until June 30, 2005, to file an application for a writ of habeas corpus in federal court. If Rudin were “properly” to file her state post-conviction petition, the time for filing an application for federal habeas relief would be statutorily tolled.
With that statutory background in mind, we turn to the series of events that occurred during, each of those respective one-year periods in this case.

1. Attorney Dayvid Figler’s Representation

On April 30, 2004, three days after the Nevada Supreme Court issued its remitti-tur on direct appeal of Rudin’s judgment of conviction, Rudin’s appellate counsel, Craig Creel, moved to withdraw as counsel and asked the trial court to appoint post-conviction counsel. The trial court granted Creel’s motion on June 8, 2004. Rudin, proceeding pro per, filed a similar motion on July 14, 2004, also seeking appointment of post-conviction counsel.[4] At a hearing *1166 on November 10, 2004, after 197 days had passed since the state supreme court issued its remittitur, the court granted Ru-din’s motion and appointed attorney Day-vid Figler to represent her.[5] Two weeks later, on November 24, 2004, the court issued an order to that effect.[6]
At the November 2004 hearing at which the state court appointed Figler to represent Rudin, Rudin attempted pro per to file with the court a series of papers. In the district court and on appeal, Rudin contends that those papers would have constituted a “properly filed” post-conviction petition had the court accepted them. See 28 U.S.C. § 2244(d)(2).[7] Pursuant to the applicable local rules, however, the court declined to accept them and instead “turned [them] over to Mr. Figler.”[8] But Figler never filed them with the court. One month later, in December 2004, Judge Bonaventure, who had presided over Ru-din’s trial and post-conviction proceedings up until that point, recused himself sua sponte, and Rudin’s case was reassigned.[9]
When Rudin’s case was reassigned to another judge on December 29, 2004, 246 days had passed since the Nevada Supreme Court issued its remittitur. Rudin therefore had 119 days left to file a petition for post-conviction relief in state court. With respect to AEDPA, 182 days had passed since that limitations period had begun to run, leaving Rudin with 183 days to file an application for federal habe-as relief. Again, the deadlines for filing those petitions were April 27, 2005, and June 30, 2005, respectively. And although Rudin had once tried to file a petition for relief herself, the post-conviction court rejected that effort because the local rules prohibited Rudin from doing so when she had “counsel of record.”
* * * * * *
The record suggests that, after Rudin’s case was reassigned (and perhaps as a result of that reassignment), substantial *1167 confusion arose between the parties and the court about whether Rudin had already filed a petition for post-conviction relief. On January 5, 2005, for example, the state court held a status hearing on Rudin’s “opening brief.” The court’s use of the term “opening brief’ suggested that the parties and the court believed that Rudin’s initial petition for post-conviction relief had been filed but that Rudin had yet to file a brief in support of that petition. See Nev.Rev.Stat. § 34.735 (establishing the form of a petition). At the same status hearing, the court granted Figler a continuance, extending his time to file the “brief’ and setting a second status hearing for July 13, 2005. At the July 13 status hearing, Figler again requested “an additional 90 days to file his brief,” which the court granted the following week. By that date, both of Petitioner’s one-year limitations periods for filing her requests for collateral relief had run. But nobody — neither Figler, nor the State, nor the court — recognized that to have occurred. On January 18, 2006, the post-conviction court again granted Figler an additional “45 days in which to file his opening brief due to the voluminous record in this case.” The State would later confirm that, at that time, the State and the court were “under the mistaken impression” that a petition had already been filed.
Meanwhile, Rudin became concerned— and we believe rightfully so — that Figler was not adequately representing her in her collateral review proceedings. According to Rudin, at some point in 2005, she requested that Figler provide her with copies of her file. Figler did not immediately respond. Figler visited Rudin only a handful of times that year, but he did not interview the witnesses she identified, and he never informed her that he had requested a series of continuances on the basis of the “complexity” of her case. Fi-gler last visited Rudin in May 2006, which was the first time in almost a year that he had done so.
In November 2005, Rudin began to gather information in support of her soon-to-be-filed motion to substitute counsel. First, she submitted an Inmate Request Form to the prison staff asking for a summary of the attorney visits she had received that past year. In a response dated a few weeks later, the staff informed her that she had received four visits, occurring on January 4, February 7, February 25, and June 17. In January 2006, after multiple failed attempts to contact Figler, Ru-din submitted a second Inmate Request Form notifying prison staff that she had “not been able to call [her] attorney since [December' 15, 2005]” and requesting that the staff fix the problem, which she was concerned was “at this facility.” Three weeks later, the prison staff responded, informing Rudin that Figler had a collect call block on his office phone and that Rudin would need to send a letter to Fi-gler requesting that the block be removed. At the same time, Rudin’s friend, who was not in prison, “repeatedly ... requested [that Figler] visit [Rudin]; have the telephone block removed; not postpone [Ru-din’s] post conviction brief filing; and send her a copy of the opening brief,” all to no avail.
Figler never filed anything with the state post-conviction court. On April 5, 2006, 511 days after Figler was appointed, Rudin moved to substitute counsel. In her motion, she described Figler’s inadequacies and expressed her “grea[t] concerfn] that she [was] not receiving adequate representation regarding her post conviction.” At a hearing on July 17, 2006, the court granted her motion and, at the same time, *1168 appointed attorney Christopher Oram, who continues to represent Rudin on appeal, to represent her.[10] The court filed an order to that effect on August 17, 2006.
To summarize the facts leading up to this point: By August 17, 2006, the day that Figler was relieved from his duties to represent Rudin, almost two years had passed since the day he was appointed to represent her. Early on in the course of Figler’s representation, Rudin’s case was reassigned to a new judge, who granted at least three of Figler’s requests for additional time to file an “opening brief.” At no point did the court ever mention the one-year limitations period under Nevada state law, and at no point did the State raise timeliness concerns. And while Fi-gler regularly attended the court’s status hearings, he appears to have done nothing else in support of his client’s request for post-conviction relief. Indeed, after June 2005, Figler stopped communicating with his client altogether, by declining to visit her in prison and by placing a collect call block on his office telephone. When Fi-gler’s representation ended, 842 days had passed since the day Rudin’s one-year state limitations period began to run, and 778 days had passed since the day her one-year AEDPA limitations period began to run. Of those days, 645 and 581, respectively, had run under Figler’s watch. And during that time, Figler had filed nothing in either state or federal court.

2. Attorney Christopher Oram’s Representation

Oram’s representation began on August 17, 2006,[11] and has continued through the course of this appeal. Oram finally filed a post-conviction petition in state court on August 21, 2007. Prior submissions or references to Rudin’s “opening brief’ notwithstanding, Oram’s August 21, 2007, submission appears to have been the first and only petition for post-conviction relief filed in the state court. It was filed three years and 116 days after the state-law statute of limitations began to run-or 846 days too late.
A colloquy between Oram, the post-conviction court, and the State at a status conference on August 22, 2007, demonstrates that, even at that late date, the parties were still confused as to whether a petition for post-conviction relief had actually been filed. Oram initially raised the issue by suggesting that he re-label his most recent filing as a petition for “a writ of habeas corpus” as opposed to a “supplement.” The post-conviction court agreed and proceeded to find “extraordinary circumstances” to excuse the delay in filing:[12]
MR. ORAM: [M]y fear is, as I look at the statute, that — um—the one year deadline to file, I looked at it and it said that — uh—the court can excuse it, and can delay the process, which I assume was going on while Mr. Figler was going through this. But perhaps I should relabel the petition for writ of habeas cor *1169 pus. I may need to amend it today, just to say where she’s located, because that’s what the statute requires.
THE COURT: Okay. I may say you should probably do that. Just do that as like a one page sheet, like an errata to your deal.
MR. ORAM: Yes.
THE COURT: And the court will find, as a matter of finding today, that [your] filing of the writ for post-conviction relief is timely, based upon — um—the fact that — uh—Mr. Figler had the case for so many years. I believe it was years.
MR. ORAM: It was two years. Yes, it was two years.
THE COURT: It was two years, and filed nothing, even though we kept having status checks. So — um—we’re going to find that it was timely filed.
Um — and it was an extensive trial. Didn’t it take several weeks?
MR. ORAM: Ten weeks.
THE COURT: Ten week trial. So that would be the extraordinary circumstance that we would find would allow the petition for post-conviction relief be filed. That, plus the fact that the first attorney didn’t do anything.
At that point, and for the very first time in two years, the State became aware that no petition had been filed and decided to speak up:
[THE STATE]: I think, Judge, that sets a bad precedent, in light of the fact that we can get multiple attorneys, and every attorney that gets this says, well, he had it too long, he had it too long. We’d like to at least address that, before you make that finding.
The post-conviction court obliged, declining to make a finding until the State had the opportunity to address the issue in further briefing. It noted, however, that “I really think that the court is going to find, not only this court, but the next court, is going to find that there were extraordinary circumstances in this case, which would allow the court to extend the one year deadline.” The State never did brief the timeliness question, nor did it ever move to dismiss Rudin’s petition.
On December 19, 2008, the post-conviction court held a hearing to consider the merits of Rudin’s petition for relief. At that hearing, the court questioned whether “the defense ... start[ed] out so far behind the starting line of this trial that no matter how much time the [c]ourt gave them during the trial ... it ultimately [was] an unfair trial.” The post-conviction court went on to state,
And there’s two standards for Strickland:[13] One is was counsel effective, and then the second standard is even if counsel wasn’t effective was the evidence so overwhelming ... against the defendant [that] it wouldn’t make any difference who defended her and how prepared they were and how many experts they called because the decision would always be guilty of murder.
In this case I can’t say that that is true. I didn’t try the case, but in reviewing the writ filed by Mr. Oram and reviewing the response by the State, and I had commented on the 22nd of October that the case was full of a cast of characters together with witnesses, and the case had a lot of intrigue and spins and loops, and there was a lot of ulterior motives on people who testified.
*1170 The experts couldn’t agree on much of anything in this case as I read the dry record. The proof of guilt was not a slam dunk by any stretch of the imagination for the State, so I can’t say — I cannot say in this case that no matter who had defended her that the verdict would have been the same.
After hearing testimony from defense attorneys Pitaro and Momot, the court granted Rudin’s request for post-conviction relief and ordered her a new trial. The post-conviction court described Ru-din’s prior trial as a “mockery of our promise to people who are in the criminal justice system that they will have an adequate defense.”
The State appealed, arguing for the first time on appeal that Rudin’s petition was untimely. In its brief, the State confirmed what we think is suggested by the record: that “in the proceedings below,” “the prosecution and the judge were under the mistaken impression that an initial petition had been timely filed.”
The Nevada Supreme Court reversed the post-conviction court’s judgment. It concluded that neither of that court’s stated reasons for excusing Rudin’s delay “affords a factual or legal basis to find that Rudin’s claims were not reasonably available to be raised in a timely manner.” Rudin sought en banc reconsideration, which the Nevada Supreme Court denied on January 20, 2011. It was only after the Nevada Supreme Court denied en banc reconsideration of Rudin’s state post-conviction appeal that Oram filed an application for habeas relief in federal court.
* * * * * *
On April 25, 2011, Rudin, still represented by Oram, applied for habeas relief in federal court. By that time, almost seven years had passed since the deadline for seeking a writ of certiorari from the U.S. Supreme Court, see 28 U.S.C. § 2244(d)(1)(A), making her application almost six years too late under AEDPA. In her application, Rudin contended that the Nevada Supreme Court erred in finding her state-court petition for post-conviction relief time-barred because either (1) the petition was timely, or (2) the State had waived any argument to the contrary when it failed to make a timeliness argument before taking its appeal. For those reasons, according to Rudin, the federal district court should have considered her state-court petition to be “properly filed” and given her the benefit of statutory tolling of the AEDPA limitations period. See 28 U.S.C. § 2244(d)(2). In the alternative, Rudin argued that equitable tolling pursuant to Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), also applied to her case. The district court granted the State’s motion to dismiss, dismissed Rudin’s petition with prejudice, and denied the certificate of appeal-ability. On October 24, 2012, we granted Rudin’s request for a certificate of appeal-ability on the question “whether the district court properly determined that the petition was barred by the statute of limitations.” We turn now to that question.
II. DISCUSSION
We review de novo the question whether a petitioner’s application for federal habeas relief was timely filed. Noble v. Adams, 676 F.3d 1180, 1181 (9th Cir.2012). We also review de novo the question whether AEDPA’s statute of limitations should be tolled. See Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir.2003). Unless the facts are undisputed, we review the district court’s findings of fact underlying a claim for equitable tolling for clear error. Stancle v. Clay, 692 F.3d 948, 953 (9th Cir.2012). The petitioner bears the burden to establish that she is entitled to *1171 tolling of the AEDPA limitations period. Id.

A. Statutory Tolling

We begin with Rudin’s argument that she is entitled to statutory tolling of the AEDPA limitations period. On this point, Rudin appears to argue that the Nevada Supreme Court erred when it found her state post-conviction petition untimely, and that had it not so erred, her petition would be considered “properly filed” under 28 U.S.C. § 2244(d)(2), entitling her to statutory tolling of the AEDPA limitations period.
While we may not have made the same decision as the Nevada Supreme Court, we are not at liberty to second guess that court’s decision when it was acting on direct appeal of the state post-conviction court’s judgment. The state supreme court concluded that Rudin’s petition was untimely under state law, and “[w]hen a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).” Pace v. DiGuglielmo, 544 U.S. 408, 414, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (internal quotation marks omitted) (second alteration in original); accord Zepeda v. Walker, 581 F.3d 1013, 1018 (9th Cir.2009). In light of Pace, and because the Nevada Supreme Court is the final arbiter of Nevada state law, that is the end of the matter here. Rudin is not entitled to statutory tolling under § 2244(d)(2) for the duration of her state post-conviction proceedings.[14]

B. Equitable Tolling

We turn, therefore, to Rudin’s argument that she is entitled to equitable tolling under Holland v. Florida. A petitioner is entitled to equitable tolling if she can establish that (1) she was pursuing her rights diligently, but (2) some extraordinary circumstance stood in her way. Pace, 544 U.S. at 418, 125 S.Ct. 1807; Sossa v. Diaz, 729 F.3d 1225, 1229 (9th Cir.2013) (“[EJquitable tolling is available ‘only when extraordinary circumstances beyond a prisoner’s control make it impossible to file a petition on time and the extraordinary circumstances were the cause of [the prisoner’s] untimeliness.’ ” (quoting Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir.2010) (second alteration in original))). Rudin bears a heavy burden to show that she is entitled to equitable tolling, “lest the exceptions swallow the rule,” Bills, 628 F.3d at 1097 (internal quotation marks omitted); however, the grounds for granting equitable tolling are also highly fact-dependent, Sossa, 729 F.3d at 1229. At bottom, the purpose of equitable tolling is to “soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having [her] day in court.” United States v. Buckles, 647 F.3d 883, 891 (9th Cir.2011) (internal quotation marks omitted); see also Holland, 130 S.Ct. at 2563 (“[W]e have followed a tradition in which courts of equity have sought to ‘relieve hardships which, from time to time, arise from a hard and fast adherence’ to more absolute legal rules, which, if strictly applied, threaten the ‘evils of archaic rigidity.’ ” (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 *1172 U.S. 238, 248, 64 S.Ct. 997, 88 L.Ed. 1250 (1944))).
In Holland, the Supreme Court held that AEDPA’s limitations period may be tolled for equitable reasons. 130 S.Ct. at 2562. In that case, the petitioner’s attorney had failed to file a timely application despite the petitioner’s repeated requests to do so, failed to inform the petitioner about crucial facts related to his case, and failed to communicate altogether with his client over a period of several years. Id. at 2564. The Supreme Court found those circumstances to constitute more than a “garden variety claim of excusable neglect,” and instead concluded that the attorney’s egregious misconduct amounted to, in essence, abandonment. Id.; id. at 2568 (Alito, J., concurring); see also Maples v. Thomas, — U.S. —, 132 S.Ct. 912, 923-24, 181 L.Ed.2d 807 (2012) (adopting Justice Alito’s reasoning in Holland addressing attorney abandonment).[15] Because of that abandonment, the petitioner’s delay could be deemed to result from misconduct that could not constructively be attributed to him, and therefore the AEDPA limitations period could potentially be tolled for the relevant period of time. Holland, 130 S.Ct. at 2564-65.
To be entitled to equitable tolling of the AEDPA limitations period, Ru-din thus bears the burden to prove that she has been pursuing her rights diligently but that extraordinary circumstances made it impossible for her to file her application on time. See Pace, 544 U.S. at 418, 125 S.Ct. 1807. Under Holland, attorney abandonment may give rise to such extraordinary circumstances. 130 S.Ct. at 2564. “The diligence required for equitable tolling purposes is ‘reasonable diligence,’ not ‘maximum feasible diligence.’ ” Id. at 2565 (citations and second and third internal quotation marks omitted). We readily conclude that extraordinary circumstances in part gave rise to Rudin’s delay in filing her application for federal habeas relief.

1. July 1, 2004, Through November 10, 2004

Between July 1, 2004, the day the AED-PA limitation period began to run, and November 10, 2004, the day that Figler was appointed to represent Rudin, Rudin was not represented by counsel. During that time, Rudin cannot establish that “extraordinary circumstances” existed to equitably toll the AEDPA limitation period. See Roy v. Lampert, 465 F.3d 964, 970 (9th Cir.2006) (“[P]ro se status, on its own, is not enough to warrant equitable tolling.”). Thus, during that time, 133 non-tolled days passed on Rudin’s AEDPA clock.

2. November 10, 2004, Through August 22, 2007

On November 10, 2004, Figler was appointed to represent Rudin in her collateral review proceedings.[16] After Figler was appointed, however, he abandoned her. Over the course of his period of *1173 representation, Figler visited Rudin in prison only a handful of times, and by mid-2005, those visits had stopped. He had a collect call block placed on his office phone, making him all but impossible to reach. And while we acknowledge that Figler physically attended the post-conviction court’s status hearings, the record makes clear that he did so with seemingly no intention to actually represent his client. All the while, Figler failed to inform Rudin of the reasons for his delay, providing her no clue of “any need to protect [herself] pro se.” See Maples, 132 S.Ct. at 917. On the record before us, it does not appear that anyone was aware of Rudin’s need to protect herself until at least August 22, 2007. We therefore conclude that extraordinary circumstances prevented Rudin from filing her application for federal habeas relief between November 10, 2004, and August 22, 2007.
Rudin was also diligent in pursuing her rights during that time, beginning with her attempt to file pro per a petition for post-conviction relief on November 10, 2004. Over the course of Figler’s representation, Rudin made repeated attempts to contact him, provided him with witness information relevant to her case, and requested that he provide her with copies of her files so that she could take additional steps on her own behalf. When Figler repeatedly failed to respond, Rudin prepared and filed her own motion to substitute counsel, which had a “brief opening supplement” attached to it. Until she filed that motion, Rudin had done everything short of filing her own “opening brief,” which, as the state court had already made clear, the local rules prohibited her from doing. We conclude that Rudin was “reasonably diligent” during the period of Figler’s representation, which is all that is required for equitable tolling purposes. See Holland, 130 S.Ct. at 2565.
Rudin is therefore entitled to equitable tolling of the AEDPA statute of limitations during the time in which Figler was representing her and up until the point at which Oram became aware that Figler had never filed anything on Rudin’s behalf. That period of time ran from November 10, 2004, to August 22, 2007.
The State argues that Rudin cannot avail herself of the benefit of equitable tolling during that time because Figler represented Rudin only in state court, not in federal court. On that point, the State contends that Figler’s inadequacies in state court had no bearing on Rudin’s ability to file a timely federal application for relief. It argues that, pursuant to Pace, Rudin should have filed a “protective” application in federal court and asked the court to stay and obey its habeas proceedings while she exhausted her state-court remedies. 544 U.S. at 416, 125 S.Ct. 1807 (“A prisoner seeking state postconviction relief [may file] a ‘protective’ petition in federal court and as[k] the federal court to stay and obey the federal habeas proceedings until state remedies are exhausted.”). Under the specific circumstances of this case, we are not persuaded by the State’s argument. See Holland, 130 S.Ct. at 2563 (“[S]pecific circumstances ... could warrant special treatment in an appropriate case.”).
For all Rudin knew — and, indeed, until August 22, 2007, for all the State knew— Rudin’s state-court petition had already been filed, making her eligible for statutory tolling under § 2244(d)(2). During the period that Figler had represented her, almost every reference to the pending filing was to an “opening” or “supplemental brief,” suggesting that the court had already received her initial petition. Even the State concedes that it believed that to be the case. During the period in which Rudin “lacked a clue” of any need to pro *1174 tect herself, we decline to impute to her knowledge that neither the State nor the court possessed. See Lott v. Mueller, 304 F.3d 918, 923 (9th Cir.2002) (declining to impute to a petitioner knowledge that, “[e]ven with the benefit of legal training, ready access to legal materials and the aid of four years of additional case law, ... evaded both [petitioner’s] appointed counsel and the expertise of a federal magistrate judge”).[17]

3. August 23, 2007, Through April 25, 2011

On August 22, 2007, at the status conference in the state post-conviction court, the parties first became aware of the fact that Figler had never filed a post-conviction petition in state court. From that point forward, Rudin should have been aware of the possibility that nothing had been “properly filed” in either state or federal court on her behalf. And at that time, having been put on notice that her state-court petition may not have been timely filed, 28 U.S.C. § 2244(d)(2), Rudin had every reason to act diligently to protect her rights. Yet she failed to do so.
Rudin offers no persuasive reason for her failure to act diligently during that time, however. Although she could have filed a protective federal habeas application while her state-court post-conviction appeal was pending, she did not. See Pace, 544 U.S. at 416, 125 S.Ct. 1807. After the State filed its notice of appeal in the Nevada Supreme Court, it should have been eminently clear to Rudin (and Oram, her counsel) that Rudin’s eligibility for AEDPA statutory tolling was in jeopardy. Absent any compelling reason for her failure to act during this time, Rudin cannot satisfy her burden to establish that she is entitled to equitable tolling after August 22, 2007.[18]
* * * * $ *
*1175 In sum, we conclude that Rudin has satisfied her burden to show that she is entitled to equitable tolling of the AEDPA limitations period until August 22, 2007, when the extraordinary circumstances making it impossible for her to file on time were removed. See Sossa, 729 F.3d at 1229. After that date, AEDPA’s one-year limitations period resumed, giving Rudin until April 10, 2008, at the latest to file her application for federal habeas relief in the district court.[19] She waited until April 25, 2011, to do so. We must therefore also conclude that Rudin’s application was, by our calculations, over three years — or 1109 days — too late.
III. CONCLUSION
We are troubled by the outcome of this case for many reasons. Margaret Rudin’s direct appeal and collateral review proceedings have been pending in either state or federal court for a combined total of 13 years. She has potentially meritorious claims that she has suffered prejudice at the hands of her own attorneys’ egregious misconduct. Yet she has never had an opportunity to present those claims in court.
Rudin’s defense counsel, Amador, indisputably engaged in egregious professional misconduct during the course of her underlying criminal trial. On direct appeal of her judgment of conviction, the Nevada Supreme Court acknowledged that Rudin’s trial was plagued not only with inadequacies on the part of defense counsel, but also with prosecutorial misconduct and legal error on the part of the State and the court.[20] Although two members of the Nevada Supreme Court found the record sufficiently clear as to the “inherent prejudice created by [trial counsel]” to require immediate reversal of Rudin’s judgment of conviction, a majority of the court declined to address the effect of those errors, finding them more appropriate for resolution on collateral review.
But then, in her collateral review proceedings, Rudin was abandoned. Rudin’s first attorney filed nothing in any court on her behalf, and he also failed entirely to investigate her post-conviction claims. By the time Rudin requested and obtained substitute counsel, her state and federal limitations periods had already run, but nobody, not even the court, knew that to be true. And although the state post-conviction court, seeing the case as a “mockery of [its] promise to people who are in the criminal justice system that they will have an adequate defense,” initially granted Rudin relief, the Nevada Supreme Court reversed that court’s judgment, finding Rudin’s petition untimely and rein *1176 stating her criminal convictions. Now, for reasons that completely escape us and that remain unexplained by the record, Rudin’s current counsel failed to file a protective habeas application in federal court to preserve Rudin’s right to any opportunity for review that may have remained.
At this point, Rudin is still in prison, having served 13 years of her life sentence for murder. We know from the state post-conviction court that the State’s “proof of guilt [at that trial] was not a slam dunk by any stretch of the imagination.” We also know from the post-conviction court that, had Rudin been represented by competent counsel, the jury’s verdict may have been different. Thus, what we do not know is whether Rudin is lawfully imprisoned. And, regrettably, that is something we may never know.
The prejudice that Rudin potentially suffered at trial has only been compounded by the inadequacies of her attorneys on collateral review, who have now precluded her from having any chance at presenting her claims in federal court. Thus, if ever there were a case in which equitable tolling should apply to soften the harsh impact of technical rules, perhaps this is that case. However, we are bound by AEDPA and the standards established under our caselaw and that of the U.S. Supreme Court, which circumscribe our power to grant relief to cases in which extraordinary circumstances-in other words, abandonment-made it impossible for the petitioner to file on time.
Applying those equitable tolling standards here, we are unable to conclude that, during the time in which Rudin was represented by her current counsel, Oram, extraordinary circumstances made it impossible for her to file a protective application for habeas relief in federal court. While we can find no explanation for Oram’s conduct, we likewise cannot conclude that he abandoned her in a way that, under Holland, would constitute extraordinary circumstances sufficient to equitably toll the AEDPA limitations period. For that reason, this case — this patent denial of the safeguards of our criminal justice system — calls for a remedy that we, as a circuit court, simply cannot provide.
Because that is so, we must AFFIRM the district court’s dismissal with prejudice of Rudin’s application. For the reasons explained earlier, we DENY the State’s motion to expand the record on appeal.

. By the time Rudin’s trial ended, the court had actually appointed a third attorney, John Momot, to assist with the defense. Rudin, 86 P.3d at 580.

. Two of the six justices dissented. They concluded that
there is sufficient evidence in the record, without the necessity of post-trial proceedings, to establish that the defense was totally unprepared to try this case and that Amador had a substantial conflict of interest with his client. This was prejudicial to Rudin, and the result reached was unreliable.
Rudin, 86 P.3d at 595 (Rose, J., dissenting).

.Rudin had ninety days from the date of the Nevada Supreme Court's decision, which was issued on April 1, 2004, to petition for a writ of certiorari. Sup.Ct. R. 13(3).

. We assume that the state court was required, under Nevada Rule of Appellate Pre-cedure 46(d)(3)(C), to wait to set a hearing date until after Rudin had filed her pro per *1166 motion for appointment of post-conviction counsel. Under that rule, in a post-conviction appeal, an attorney’s motion to withdraw as counsel "shall be accompanied by ... a motion by defendant to proceed in proper person or with substitute counsel.”

. The record is not clear as to the reason, if any, that the post-conviction court delayed four months in hearing Rudin’s pro per motion for appointment of post-conviction counsel. Cf. Nev.Rev.Stat. §§ 34.740 (requiring "expeditious judicial examination” of petitions for postconviction relief); 34.726 (limiting the period for filing a petition to one year). In the district court, Rudin argued in passing that the state court’s four-month delay was "unnecessarily long” and was a part of the "extraordinary circumstances” that gave rise to her filing delay. She does not renew that argument on appeal.

. We, like the district court, give Rudin every benefit of the doubt. We therefore take November 10, 2004, not November 24, 2004, as the date on which Figler’s representation commenced.

. We give Rudin every benefit of the doubt and assume her contention is accurate.

. Rule 3.70 of the Rules of Practice for the Eighth Judicial District Court of the State of Nevada provides that papers "delivered to the clerk of the court by a defendant who has counsel of record will not be filed [but will be] forwarded to that attorney for such consideration as counsel deems appropriate.”

. Judge Bonaventure recused himself as a result of personal biases that he had against Rudin’s previous appellate counsel, Craig Creel. See Matt Pordum, Bonaventure Won’t Hear Rudin Appeal, Las Vegas Sun, Dec. 28, 2004, http://www.lasvegassun.com/news/2004/ dec/2 8/bonaventure-wont-hear-rudin-appeal/ (" 'My blood boils every time I hear the name Craig Creel.... Whether I look at him or think of him, my blood boils. I'm getting a headache thinking of him right now.’ ” (quoting Bonaventure, J.)).

. Attached to Petitioner’s motion to substitute counsel was what she called a “brief opening supplement,” presumably to her petition for postconviction relief. When the post-conviction court ruled on her motion, however, it appears to have construed the filing solely as a motion to substitute counsel, not as a petition for post-conviction relief.

. Oram technically was appointed at the hearing that took place on July 17, 2006. Again, however, we seek to give Rudin every benefit of the doubt. We therefore consider Figler’s representation to have extended until the date on which the court entered its order substituting counsel, which was August 17, 2006.

.We assume that the post-conviction court’s reference to "extraordinary circumstances” is equivalent to, or was intended to mean, "good cause,” which is the standard to excuse a filing delay under Nevada Revised Statute section 34.726.

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. We likewise reject Rudin’s argument that she can claim the benefit of equitable tolling in state court, thereby entitling her to statutory tolling in federal court. Equitable tolling under Holland v. Florida is a federal doctrine entirely separate from state law. See 130 S.Ct. at 2563 ("Equitable tolling [is] an inquiry that does not implicate a state court’s interpretation of state law.”); see also Coleman v. Thompson, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (applying the independent and adequate state ground doctrine to the habeas context).

. Mere negligence on the part of a prisoner’s post-conviction counsel does not warrant equitable tolling. Holland, 130 S.Ct. at 2564. “That is so ... because the attorney is the prisoner’s agent, and under ‘well-settled principles of agency law,’ the principal bears the risk of negligent conduct on the part of his agent.’’ Maples, 132 S.Ct. at 922 (quoting Coleman, 501 U.S. at 753-54, 111 S.Ct. 2546). But when an attorney abandons his client, the principal-agent relationship is severed, and the attorney’s “acts or omissions therefore 'cannot fairly be attributed to [the client].' ” Id. at 923 (quoting Coleman, 501 U.S. at 753, 111 S.Ct. 2546) (alteration in original).

. It is significant that Figler’s representation commenced before June 30, 2005. That is so because extraordinary circumstances cannot toll a statute of limitations that has already run.

. The State filed a motion in this court to expand the record on appeal to include various state-court documents that it had not, for whatever reason, made a part of the record in the district court. As a general rule, documents not filed with the district court cannot be made part of the record on appeal. See Fed. R.App. P. 10(a) ("[T]he original papers and exhibits filed in the district court; the transcript of proceedings, if any; and a certified copy of the docket entries prepared by the district clerk” ... "constitute the record on appeal.”); Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1077 (9th Cir.1988). There are of course narrow exceptions to that general rule, which we may, in our discretion and in "unusual circumstances,” invoke. Lowry v. Barnhart, 329 F.3d 1019, 1024-25 (9th Cir.2003) (listing exceptions).
The State offers no compelling reason for its failure to make these documents part of the record in the district court. Ironically, the reasons it offers for doing so are the same reasons to which it objected when the state post-conviction court found that Rudin had established good cause for her filing delay: that "this is not a typical case,” that "Rudin’s trial was one of the longest in Nevada history," and that, overall, the proceedings below were complex.
We do not need the documents that the State seeks to make part of the record on appeal in order to decide this case. Thus, we decline to depart from our general rule. The State’s motion to expand the record on appeal is DENIED.

. The dissent takes issue with our conclusion in this respect, pointing out that by the time Rudin learned that Figler had never filed a postconviction petition on her behalf, the AEDPA limitations had already run. Therefore, the dissent argues, Rudin had nothing left to protect, and any protective application for habeas relief would have been pointless.
But our caselaw still requires that Rudin show some degree of diligence during that time. We cannot conclude that, simply because the AEDPA statute of limitations had run, Rudin needn’t have filed anything in federal court. Although a district court might have "dismissed [Rudin's application] because it was untimely,” Rudin would have had every right to appeal such a decision and seek relief on equitable tolling grounds. In any event, our cases do not permit us to *1175 resolve this appeal by speculating as to what might have happened had Rudin been diligent; rather, those cases required Rudin to show that she was diligent by filing something in federal court. See White v. Martel, 601 F.3d 882, 884-85 (9th Cir.2010) (per curiam) (rejecting the argument that filing a protective application after the AEDPA statute of limitations had run would have been "pointless or even detrimental” and concluding that failure to file demonstrated a lack of diligence). Unfortunately, Rudin did not. We are therefore compelled to conclude that she is not entitled to equitable tolling of the AEDPA statute of limitations after August 22, 2007.

. Again, giving Rudin every benefit of the doubt, we assume that equitable tolling preserves the remaining AEDPA limitations period.

. On direct appeal, the Nevada Supreme Court noted that, at trial, the State had withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Nevada Supreme Court also noted that the trial court had applied the wrong legal standard when it ruled on Rudin’s requests for a mistrial. The state supreme court concluded, however, that those errors were harmless.