**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT JEROME ESPINOZA-MATTHEWS
*Petitioner-Appellant,*

v.

PEOPLE OF THE STATE OF CALIFORNIA,
Attorney General,
*Respondent-Appellee.*

No. 04-56805

D.C. No.
CV-03-00921-
RGK(Mc)

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
October 21, 2005—Pasadena, California

Filed December 28, 2005

Before: A. Wallace Tashima and Raymond C. Fisher,
Circuit Judges, and Milton I. Shadur, Senior District Judge.*

Opinion by Judge Shadur

---

*The Honorable Milton I. Shadur, Senior United States District Judge
for the Northern District of Illinois, sitting by designation.

16749

**COUNSEL**

Maria E. Stratton, Federal Public Defender; Harry Simon, Deputy Federal Public Defender; Federal Public Defender, Los Angeles, California, for the petitioner-appellant.

Bill Lockyer, Attorney General; Robert R. Anderson, Chief Assistant Attorney General; Gary W. Schons, Senior Assistant Attorney General; Gary W. Brozio, Supervising Deputy Attorney General; Erika Hiramatsu, Deputy Attorney General; Office of the Attorney General, San Diego, California, for the respondent-appellee.

**OPINION**

SHADUR, Senior District Judge:

Robert Jerome Espinoza-Matthews ("Espinoza-Matthews") appeals the district court's determination that his petition for a writ of habeas corpus was barred by the one-year statute of limitations set out in 28 U.S.C. § 2244(d).[1] Espinoza-Matthews claims that the statute of limitations governing his habeas petition (1) should be equitably tolled both because he was denied access to his legal materials while housed in Administrative Segregation ("Ad/Seg") and because of his mental health problems and (2) should be statutorily tolled because of the deprivation of legal materials.

We have jurisdiction pursuant to Sections 1291 and 2253. Because we hold that Espinoza-Matthews is entitled to equitable tolling, we reverse the district court's determination that his habeas petition was untimely and remand for further proceedings consistent with this opinion. And because statutory tolling would necessarily rest on a constitutional ground, one that need not be addressed to arrive at our equitable tolling decision, we refrain from deciding whether the same destination can be reached by the application of statutory tolling principles (*see Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002)).

*Background*

On May 4, 2000 Espinoza-Matthews pleaded guilty to conspiracy to commit robbery, to three counts of robbery, to the unlawful taking of a vehicle and to possession of a firearm by an ex-felon, with special allegations as to a number of those counts. After accepting Espinoza-Matthews's plea, on June 15, 2000 the Riverside County Superior Court sentenced him

---

[1]All further citations to Title 28 provisions will simply take the form "Section—."

to 19 years and 8 months in state prison. On October 1, 2001 the California Court of Appeal substantially affirmed Espinoza-Matthews's conviction in an unpublished disposition.

On December 10, 2001 Espinoza-Matthews filed a petition for writ of habeas corpus in the California Supreme Court. That petition was denied on April 17, 2002.

Three days before that denial Espinoza-Matthews was placed in Ad/Seg at California State Prison, Sacramento ("Sacramento") for his own protection, after he had been assaulted and slashed by another inmate. Espinoza-Matthews was housed in Ad/Seg from April 14, 2002 until March 2003, with only one interruption for him to return to court on May 16, 2002 for resentencing.[2]

Following his release from Ad/Seg, on March 30, 2003 Espinoza-Matthews signed and delivered to the prison warden a request directed to the District Court for the Northern District of California, seeking an extension of time to file his federal habeas petition. Espinoza-Matthews claimed that he needed an extension of at least 120 days because he had been given no access to his legal property while he was in Ad/Seg and because he was mentally ill. On June 18, 2003 that court dismissed Espinoza-Matthews's request for lack of jurisdiction, noting that because Espinoza-Matthews had not yet filed a habeas petition there was no case or controversy for the court to decide.

Without having waited for the court's decision on his request for an extension, on May 12, 2003 Espinoza-

---

[2]While Espinoza-Matthews claims that he was released from Ad/Seg on March 21, 2003, the record shows that he was received by the California State Prison, Los Angeles County, 16 days earlier—on March 5. For present purposes we will assume that March 5 was the end date of Espinoza-Matthews's Ad/Seg detention.

Matthews signed his federal habeas petition, stating there that he gave the petition to prison officials for mailing on that date. Espinoza-Matthews's petition raised three issues: (1) that he had been on psychotropic medications since the date of his arrest, (2) that his Sixth Amendment rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) had been violated during police questioning and (3) that the prosecutor had tampered with evidence, falsified reports and intimidated witnesses. On July 24, 2003 the clerk of the District Court for the Northern District of California filed the petition. Because it had been filed in the wrong court, however, on July 31, 2003 that court transferred the petition to the Central District of California, where it was filed on August 11, 2003.

On October 16, 2003 the State moved to dismiss Espinoza-Matthews's petition because, among other reasons, it was assertedly untimely. In response, on November 7, 2003 Espinoza-Matthews filed a "Motion for Order Permitting Petitioner to Amend His Pleadings, etc." Espinoza-Matthews argued there (1) that his habeas petition was timely under Section 2244(d)(1)(A), (2) that he was entitled to statutory tolling because the "law library access scheme" at Sacramento was a state-created impediment that prevented him from filing his petition and (3) that he was entitled to equitable tolling because he had a "serious mental illness" constituting an extraordinary circumstance beyond his control.

In his Report and Recommendation the magistrate judge found no evidence that Espinoza-Matthews was entitled to statutory or equitable tolling and therefore agreed with the State that Espinoza-Matthews's petition was untimely. According to the magistrate judge, Espinoza-Matthews had not "further described the 'law library access scheme' or his 'serious mental illness' or how they caused him to fail to file a timely petition for writ of habeas corpus here."

On March 25, 2004 Espinoza-Matthews filed a "Traverse to Notice of Motion and Motion to Dismiss Petition for Writ

of Habeas Corpus." In his traverse Espinoza-Matthews argued that he was entitled to statutory tolling not only because of the prison's library scheme but also because prison officials had deprived him of his legal property from May 17, 2002 until he was released from Ad/Seg in March 2003. Espinoza-Matthews also contended that he was entitled to equitable tolling based on the denial of his legal property and his mental illness. While Espinoza-Matthews cited to "Exhibit H" to support his claim of mental incompetency, no Exhibit H was attached to his traverse.

After receiving Espinoza-Matthews's traverse, the magistrate judge issued a Supplemental Report and Recommendation ("SR&R"), again rejecting Espinoza-Matthews's arguments for tolling the statute of limitations. In doing so the magistrate judge first evaluated Espinoza-Matthews's argument that he was denied access to his legal materials while in Ad/Seg, albeit only under the rubric of statutory tolling. Finding that Espinoza-Matthews had not specified which legal papers were missing, how the absence of those papers prevented him from filing his petition and "when, if ever, [Espinoza-Matthews] regained control of his legal property," the magistrate judge rejected that claim. Second, as to Espinoza-Matthews's claim for equitable tolling based on his mental problems, the magistrate judge found that there were no "medical, psychiatric or psychological records" to support Espinoza-Matthews's claim and there was "considerable evidence that petitioner was able to prepare and file legal documents" and administrative appeals during the period in question.

In response to the magistrate judge's SR&R, Espinoza-Matthews filed a timely objection with the district court. Espinoza-Matthews argued there that he had been denied his legal property during the whole time he was in Ad/Seg—not simply starting in May 2002, when he was returned to court for resentencing. Espinoza-Matthews attached additional evidence demonstrating when he was transferred into and out of

Ad/Seg and documenting his attempts to secure his legal property while in Ad/Seg in an effort to prepare his habeas petition. Finally, Espinoza-Matthews affixed his mental health records.

On August 27, 2004 the district court, following a "de novo" review of "those portions of the [magistrate judge's] report to which objection [was] made," adopted the magistrate judge's findings and recommendations. After the district court denied Espinoza-Matthews a certificate of appealability ("COA"), we granted Espinoza-Matthews a COA on several issues:

> (1) Whether the district court erred in dismissing appellant's 28 U.S.C. § 2254 petition as untimely;

> (2) Whether the deprivation of appellant's legal property by the state prison system from May 2002 until March 2003 constitutes a state-created impediment to filing a timely Section 2254 petition;

> (3) Whether appellant is entitled to equitable tolling based on his mental health condition, *see Calderon v. United States District Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc);**³** and

> (4) Whether the district court erred in failing to hold an evidentiary hearing on the above tolling issues. *See* 28 U.S.C. § 2253(c)(3).

### *Standard of Review*

We review de novo the district court's denial of a habeas corpus petition for failure to comply with the one-year statute of limitations established in the Antiterrorism and Effective

---

**³**That case is hereafter cited as *Kelly*—the name of the inmate who was the real party in interest.

Death Penalty Act of 1996 ("AEDPA") (*Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003)). If the facts underlying a claim for tolling of the habeas limitations period are undisputed, the question whether the statute of limitations should be tolled is reviewed de novo. But otherwise a district court's findings of fact are reviewed for clear error (*Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003)).

*Timeliness of Petition*

**[1]** Section 2244(d) provides a one-year statute of limitations for petitions filed by state prisoners seeking collateral habeas relief in federal courts. For Espinoza-Matthews that one-year clock began to tick on November 11, 2001, once his state conviction became final (*see Smith v. Duncan*, 297 F.3d 809, 812-13 (9th Cir. 2002)). Under Section 2244(d)(2) Espinoza-Matthews was entitled to toll the statute of limitations while his California state habeas petition was pending: from December 10, 2001 (when he filed his petition) to May 17, 2002 (when the California Supreme Court's denial of his petition became final) (*see Bunney v. Mitchell*, 262 F.3d 973, 974 (9th Cir. 2001) (per curiam)). On April 18, 2003, 336 days later, the statute of limitations would have expired but for the possibility of equitable or statutory tolling.

There is a dispute between the parties about when Espinoza-Matthews filed his petition—in particular, whether Espinoza-Matthews should get the benefit of the "prisoner's mailbox rule" (*see Miles v. Prunty*, 187 F.3d 1104, 1106 n.2 (9th Cir. 1999)) when he filed his petition in the wrong court and the petition was later transferred to the right court. Even if Espinoza-Matthews were to be given the benefit of the prisoner's mailbox rule, at the earliest his petition would be deemed to have been filed on May 12, 2003, 24 days late. Without the benefit of the prisoner's mailbox rule, Espinoza-Matthews's petition would be viewed as having been filed on August 11, 2003, 115 days late. In either event, then,

Espinoza-Matthews's petition would be untimely without the aid of equitable or statutory tolling.[4]

*Equitable Tolling of AEDPA's Statute of Limitations*

Despite the express and more limited language of the COA, both the State and Espinoza-Matthews agreed at oral argument (having earlier briefed both issues) that the COA included not only (1) whether Espinoza-Matthews was entitled to equitable tolling because of his mental problems but also (2) whether he was entitled to equitable tolling because he was denied access to his legal materials while housed in Ad/Seg. We address that second ground for equitable tolling, for analysis shows that of itself it suffices for the relief that Espinoza-Matthews seeks.

**[2]** On that score, equitable tolling of AEDPA's one-year statute of limitations is available in this Circuit, but only when "extraordinary circumstances beyond a prisoner's control

---

[4]In the following evaluation of Espinoza-Matthews's claims for equitable tolling, we have taken into consideration the supplemental evidence that he submitted to the district court in his objection to the magistrate judge's SR&R. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) held "that a district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." *Howell, id.* at 622 further explained "that in making a decision on whether to consider newly offered evidence, the district court must actually exercise its discretion, rather than summarily accepting or denying the motion." In this case it is impossible to tell, from the district court's cursory boilerplate statement that it "made a de novo determination of those portions of the [magistrate judge's] report to which objection has been made," whether the court exercised its discretion and reviewed the new evidence or whether the court instead declined to exercise its discretion and summarily accepted the magistrate judge's SR&R (*see Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002)). Because Espinoza-Matthews was a pro se petitioner at all relevant times, we hold that the district court should have exercised its discretion to review the supplemental evidence that Espinoza-Matthews submitted (*see id.*). For that reason we have reviewed that evidence on this appeal.

make it impossible to file a petition on time" (*Spitsyn*, 345 F.3d at 799 (internal quotation marks and citations omitted)). That determination is "highly fact-dependent" (*Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc per curiam)), and Espinoza-Matthews "bears the burden of showing that equitable tolling is appropriate" (*Gaston v. Palmer*, 417 F.3d 1030, 1034 (9th Cir. 2005)).[5]

**[3]** As to Espinoza-Matthews's second-stated ground for such relief, we held in *Lott*, 304 F.3d at 924 that a habeas petitioner's deprivation of his legal materials for 82 days would constitute an "extraordinary circumstance" sufficient to warrant equitable tolling. In *Lott* the petitioner was denied access to his legal files during two temporary transfers and was returned those materials only shortly before AEDPA's statute of limitations was to expire (*id*. at 921-22).

Just as was true for the petitioner in *Lott*, Espinoza-Matthews was denied access to his legal materials—indeed, for much longer than 82 days. It was back in July 2002 that Espinoza-Matthews became concerned that his property might be lost and began inquiring about its whereabouts. In his inquiry he also specifically requested that once his property was found, he should be given access to his legal documents so that he could prepare his federal habeas petition.

---

[5]Although *Gaston, id.* also repeated the "impossible to file a petition on time" language, a few months earlier the Supreme Court had framed the equitable tolling standard in less absolute terms in *Pace v. DiGuglielmo*, ___ U.S. ___, 125 S.Ct. 1807, 1814 (2005):

> Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.

We need not decide whether *Pace* has lowered the bar somewhat, because Espinoza-Matthews meets the more demanding *Spitsyn-Gaston* articulation in any event.

Although Espinoza-Matthews's property was found shortly after his July 2002 inquiry, he was not then given his legal papers. As a result he continued to pursue his administrative appeals. In August 2002 he asked prison staff to locate and bring to him "legal mail that came from appellate court and from Riv. Co. Sheriff dept. [sic]." In September 2002, after his earlier requests had failed, he once more asked prison officials for his "legal mail - (1) appeal court; (1) Riverside County Sheriff Office; (1) letter from attorney appeal attorney" and other "legal miscellaneous material." Still with no luck, in December 2002 Espinoza-Matthews again requested his "legal property."

In virtually every instance the prison officials' responses suggested that Espinoza-Matthews could not access his property until after he was released from Ad/Seg.[6] Thus his July 30, 2002 request for access to his "legal property" so that he could "start working on [his] court appeal" was met with a corrections officer's response that:

> all of your property is currently being held in R&R Ad-Seg storage. It will be released to you when you are released from EOP-Ad-Seg.

And after the August 2002 property request, a corrections officer similarly told Espinoza-Matthews:

---

[6]In its brief the State attempts to make much of the fact that in September 2002 a corrections officer wrote to Espinoza-Matthews that he "was permitted to receive some items of property through the mail." But the State fails to explain what seems inexplicable: how requesting property "through the mail"—when the property was being held onsite and the request would be directed to the same officers who were repeatedly telling Espinoza-Matthews that he could not gain access to his property while in Ad/Seg—would achieve a better response than Espinoza-Matthews had received through his repeated written and oral requests for his property. Additionally, the State tries to argue that Espinoza-Matthews was unsuccessful in his requests to obtain his legal property because those requests were not sufficiently specific. That contention too is wholly unpersuasive.

> I understand your request, but at this time I am not authorized to remove any property from your box.

In his motion for an extension of time to file his habeas petition, Espinoza-Matthews consequently explained that pursuant to prison policy he could not gain access to his legal property for the entire duration in which he was housed in Ad/Seg because he "had no court order saying [that he] had a case needing to be filed within 45 days."

[4] As we have recognized, it is "unrealistic to expect [a habeas petitioner] to prepare and file a meaningful petition on his own within the limitations period" without access to his legal file (*Spitsyn*, 345 F.3d at 801). For nearly 11 months, despite his diligence, Espinoza-Matthews could not obtain his legal papers.[7] After his release from Ad/Seg, Espinoza-Matthews had only slightly over a month with his legal file to try to prepare a proper petition.[8] Under those circumstances Espinoza-Matthews is entitled to equitable tolling.[9]

[5] Because Espinoza-Matthews was denied access to his legal materials for the duration in which he was housed in Ad/Seg, we will toll the statute of limitations for that entire period —from April 14, 2002 until March 5, 2003. Once such equitable tolling is taken into account, Espinoza-Matthews's federal habeas petition was timely filed whether or not he gets the

---

[7]Denial of access to Espinoza-Matthews's legal property while he was in Ad/Seg is particularly troublesome because, as he points out, he was housed in Ad/Seg not as punishment but to protect him from further assault.

[8]As *Lott,* 304 F.3d at 924 explained, even where a petitioner "had access to his legal files on the days before his AEDPA limitations period expired," as Espinoza-Matthews did here, "earlier events [may have] so disabled him as to make a timely filing impossible (e.g., a temporary transfer, such as [the petitioner's], which lasted 360 days)."

[9]As suggested earlier, this conclusion renders it unnecessary to reach Espinoza-Matthews's argument for the same relief based on his mental illness.

benefit of the prisoner's mailbox rule. And that also makes it unnecessary to examine the alternative potential for statutory tolling.

## *Conclusion*

For the reasons stated in this opinion, we REVERSE the dismissal of Espinoza-Matthews's federal habeas petition as untimely and REMAND to the district court for further proceedings consistent with this opinion.