**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

GEORGE W. GIBBS,
           *Petitioner-Appellant*,


v.


ROBERT LEGRAND, Warden;
ATTORNEY GENERAL FOR THE STATE
OF NEVADA,
           *Respondents-Appellees*.

</td>
<td>

No. 12-16859

D.C. No.
2:11-cv-00750-
KJD-CWH


OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, Senior District Judge, Presiding

Argued and Submitted
March 13, 2014—San Francisco, California

Filed September 17, 2014

Before: Sidney R. Thomas, Raymond C. Fisher,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[*]

### Habeas Corpus

The panel reversed the district court's order dismissing a habeas corpus petition as untimely, and remanded for consideration of the petition on the merits.

The panel held that the petitioner's attorney's misconduct was an extraordinary circumstance which directly caused the petitioner not to learn that the time for him to file his federal habeas petition had begun until the time was over – where counsel did not inform the petitioner that state post-conviction proceedings had ended, even though counsel had pledged to do so, even though the petitioner wrote to his counsel repeatedly for updates, and even though the time in which to file a federal habeas petition was swiftly winding down. The panel also held that the petitioner exercised reasonable diligence in pursuit of his post-conviction rights both before and after learning of the Nevada Supreme Court's denial of the appeal of his state post-conviction petition.

### COUNSEL

Megan C. Hoffman (argued), Debra A. Bookout, and Ryan Norwood, Assistant Federal Public Defenders, Las Vegas, Nevada, for Petitioner-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Victor-Hugo Schulze, II (argued), Senior Deputy Attorney General, Las Vegas, Nevada, for Respondents-Appellees.

**OPINION**

BERZON, Circuit Judge:

This case arises from a prisoner's vigorous pursuit of post-conviction review in the face of egregious misconduct from his court-appointed lawyers. We focus here on one serious episode of attorney misconduct: The failure, despite prisoner-petitioner George Gibbs's repeated inquiries, to inform Gibbs that the Nevada Supreme Court denied the appeal of his state post-conviction petition. By the time Gibbs learned the fate of his appeal, he had already missed the one-year deadline for filing a federal habeas corpus petition.

We hold that the attorney's conduct amounted to client abandonment, and that the district court erred by not recognizing that such abandonment can, in certain circumstances, constitute an extraordinary circumstance warranting equitable tolling of the federal filing deadline. Accordingly, we reverse the district court's dismissal of Gibbs's petition and remand for consideration of the petition on the merits.

**I.**

Gibbs was convicted by a Nevada jury for crimes ranging from manufacture of a controlled substance to possession of child pornography and received a life sentence with the possibility of parole. The Nevada Supreme Court affirmed

his conviction on June 3, 2003. Two instances of attorney misconduct, not directly relevant here, prevented Gibbs from properly filing his state petition for post-conviction relief ("PCR petition") until 2007.[1] That petition was rejected on the merits, and Gibbs appealed to the Nevada Supreme Court. Dayvid Figler was appointed to represent Gibbs on the PCR appeal.

Relations between Gibbs and Figler quickly soured. In November and December of 2008, Gibbs sent a series of letters to Figler noting his frustration with Figler's failure to communicate with him. Figler did not respond to Gibbs's letters, and Gibbs lodged a complaint against Figler with the Nevada State Bar. The State Bar forwarded the complaint to Figler's law firm, Bunin & Bunin, prompting Figler to reach out to Gibbs. Gibbs, in turn, alerted the State Bar that Figler was now "on board." The Bar dismissed the complaint, informing Gibbs that the "matter has been resolved."

Figler filed Gibbs's state PCR appeal with the Nevada Supreme Court on August 12, 2009. On May 25, 2010, he wrote to Gibbs on the letterhead of a new firm, Bailus, Cook & Kelesis, promising to forward him "*any receipt of notice from [the] Supreme Court*" (emphasis in original) and

---

[1] First, Gibbs's attorney on direct appeal refused to hand over Gibbs's files. Then, new counsel agreed to file Gibbs's PCR petition but never did so. Gibbs was not aware that PCR counsel did not file the promised petition until the state court ruled that any further petitions were barred as untimely because the first PCR petition was never filed. Gibbs appealed the state court's untimeliness ruling pro se, arguing that his attorney's misconduct constituted good cause to overcome the state procedural bar. The Nevada Supreme Court agreed and, in November 2006, vacated the state court's judgment and remanded for consideration of Gibbs's petition on the merits.

inviting him to "send written correspondence to the above address if you have any questions or concerns." The letter also stated, erroneously, that "the time for you to file post-conviction relief has not yet started"; in fact, Gibbs was in the midst of pursuing post-conviction relief.

In June 2010, the Nevada Supreme Court affirmed the denial of Gibbs's PCR petition. Despite his pledge to do so, Figler did not forward Gibbs the notice from the Nevada Supreme Court that the petition had been denied. In both June and October of 2010, unaware that the Nevada Supreme Court had issued its decision, Gibbs wrote to Figler expressing his renewed frustration with the attorney's lack of communication and offering suggestions about how to present his case to the Nevada Supreme Court. "I have not heard from you in over 8 months," Gibbs complained. "I never got a response from you, asking you to add the Melendez case to my opening brief. It was a big concern to me that you look it over and respond to your thoughts of all my effort. Figler did not reply.

On December 3, Gibbs wrote to the Nevada Supreme Court requesting the docket sheet and explaining, "I can not find my attorney of record." On December 11, he wrote to the Nevada State Bar in search of Figler's address, phone number and bar number.[2] Two days later, on December 13, he wrote a third letter to Figler, with suggestions for possible oral argument. The next day, December 14, Gibbs received the docket sheet from the court and discovered that his appeal had been rejected six months earlier.

---

[2] The current record does not indicate whether or when the State Bar provided Gibbs Figler's address, nor whether the December 13 letter was correctly addressed.

Gibbs promptly took pen to paper to express his "amazement" at Figler's unethical conduct. "I have done everything in my power to locate you to no avail. The concern [be]came very serious so I wrote the Supreme Court for a Docket Sheet." He asked, "what do I do now[?]" and requested that Figler address his concerns "with simple communication." Figler did not respond. On December 20, Gibbs wrote to the Supreme Court again, requesting copies of its order affirming the denial of his petition and the remittitur.

Finally, on February 7, 2011, Gibbs wrote to Figler terminating him as counsel and requesting that he return Gibbs's documents within five days.[3] "By failing to inform me you have put me in a terrible position," Gibbs wrote. "[U]nskilled in law" and with "little access to a full law library service," he explained that he now faced the "daunting task" of preparing his own federal habeas petition. Three weeks later, on February 28, Gibbs's sister acquired a "banker's box" of files from Figler. Gibbs mailed his federal habeas petition on May 3, 2011, approximately sixty-five days after his sister procured his files from Figler.

The Warden moved to dismiss, arguing that Gibbs's petition was untimely. Gibbs countered that his attorney's misconduct entitled him to equitable tolling such that the petition was timely. The district court granted the motion to dismiss, ruling that equitable tolling was not merited because

---

[3] The record does not indicate how Gibbs discovered that Figler had again switched law firms — he was now, apparently, at J.S.L. Law Firm. Presumably by this point, the State Bar had provided the address in response to Gibbs's request. In any case, the record suggests that Figler's change of firms, without notice to Gibbs, made it particularly difficult for Gibbs to contact him.

Gibbs had "not demonstrated that his counsel was . . . incompetent," but only that "he had trouble communicating with the attorney and that he was not timely informed that his appeal had been decided." After the district court issued a certificate of appealability on the equitable tolling question, Gibbs brought this appeal.

## II.

We review de novo the dismissal of a federal habeas petition as untimely. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). "If the facts underlying a claim for equitable tolling are undisputed, the question of whether the statute of limitations should be equitably tolled is also reviewed de novo. Otherwise, findings of fact made by the district court are to be reviewed for clear error." *Id.* (citation omitted) (citing *Miles v. Prunty*, 187 F.3d 1104, 1105 (9th Cir. 1999)).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner ordinarily has one year from the date his state conviction becomes final to file a habeas corpus petition in federal court. 28 U.S.C. § 2244(d)(1)(A). By statute, the limitations period is tolled while a properly filed state post-conviction petition is pending. *Id.* § 2244(d)(2).

Excluding the statutorily tolled period when Gibbs's post-conviction petition was before the Nevada courts, both parties, and the district court, agree that Gibbs accrued 257 untolled days before the Nevada Supreme Court denied his PCR appeal. Absent equitable tolling, then, Gibbs had 108 days to file his federal habeas petition, with the limitations period expiring October 22, 2010. Gibbs did not file his federal petition until May 3, 2011, 193 days late.

AEDPA's one-year statute of limitations is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649 (2010). A litigant seeking equitable tolling bears the burden of establishing two elements: (1) "'that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

For Gibbs's petition to be timely, he has to establish equitable tolling through at least January 15, 2011.**[4]** In considering whether he had done so, we address the two *Holland* requirements for equitable tolling in reverse order, as the facts of this case lend themselves better to that treatment.

## A. Extraordinary Circumstances

Courts take a flexible, fact-specific approach to equitable tolling. "[S]pecific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.* at 650; *see also Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc).

Consistent with the flexible approach, attorney conduct compromising the filing of a timely federal habeas petition

---

**[4]** At oral argument, the Warden objected for the first time to the district court's finding that statutory tolling ceased when the Nevada Supreme Court's remittitur issued on July 6, 2010, claiming instead that it ceased when the decision was reached, on June 9, 2010. If equitable tolling is warranted, it is warranted for the time period when, due to Figler's abandonment, Gibbs was unaware that the Nevada Supreme Court had reached its decision. Thus, whether statutory tolling ended on June 9 or July 6 is irrelevant to our disposition of this appeal; either date would be within the equitable tolling period if one is warranted.

can constitute the requisite "extraordinary circumstance" in some circumstances but not others. *Holland* held that "garden variety claim[s] of excusable neglect" — such as "simple miscalculation" of time limits — do not constitute an extraordinary circumstance. 560 U.S. at 651–52 (internal quotation marks omitted). But attorney misconduct *can* be so egregious as to create an "extraordinary circumstance," justifying equitable tolling. *Id.* at 652. In a concurring opinion, Justice Alito explained his understanding of the logic behind this framework, reasoning that, "the principal rationale for disallowing equitable tolling based on ordinary attorney miscalculation is that the error of an attorney is constructively attributable to the client and thus is not a circumstance beyond the litigant's control." *Id.* at 657 (Alito, J., concurring).

*Maples v. Thomas* clarified *Holland*'s distinction between "garden variety" attorney negligence and egregious attorney misconduct, drawing on Justice Alito's *Holland* concurrence and casting the distinction in terms of agency principles.[5] 132 S. Ct. 912, 923–24 (2012). *Maples* explained that while agency law binds clients, including federal habeas petitioners, to their attorneys' negligence, "a client cannot be charged with the acts or omissions of an attorney who has abandoned him." *Id.* at 924. An attorney's failure to communicate about

---

[5] *Maples* involved cause for procedural default rather than entitlement to equitable tolling, but the Supreme Court saw "no reason" why the distinction between attorney negligence and attorney abandonment should not hold in both contexts. 132 S. Ct. at 924 n.7. Because we hold that Figler's conduct amounted to abandonment of his client under the standard announced in *Maples*, we do not have occasion to consider whether attorney misconduct which stops short of effective abandonment could, in appropriate instances, constitute an extraordinary circumstance supporting equitable tolling.

a key development in his client's case can, therefore, amount to attorney abandonment and thereby constitute an extraordinary circumstance. *Maples*, 132 S. Ct. at 923–24; *see also Towery v. Ryan*, 673 F.3d 933, 942–43 (9th Cir. 2012).

### 1.

So, contrary to the district court's analysis of the circumstances here, it was absolutely critical that Gibbs "had trouble communicating with [his] attorney" and "was not timely informed that his appeal had been decided": If Gibbs's attorney effectively abandoned him, Gibbs cannot be charged with the knowledge that the Nevada Supreme Court had denied his appeal.

Failure to inform a client that his case has been decided, particularly where that decision implicates the client's ability to bring further proceedings *and* the attorney has committed himself to informing his client of such a development, constitutes attorney abandonment. *See Mackey v. Hoffman*, 682 F.3d 1247, 1253 (9th Cir. 2012). Attorneys are generally required to "perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, [and] to keep their clients informed of key developments in their cases." *Holland*, 560 U.S. at 652–53. Gibbs's attorney failed on all but the first count.[6]

---

[6] After reciting these general standards, *Holland* remanded as to whether there were extraordinary circumstances, because the district court had not reached the issue. But *Holland* identified as "serious instances of attorney misconduct" possibly constituting extraordinary circumstances, several factors: that Holland's attorney "failed to file Holland's federal petition on time"; did not "do the research necessary to find out the proper filing date"; "failed to inform Holland in a timely manner about the crucial fact

Our case law confirms that Figler's behavior in failing to notify Gibbs of the Nevada Supreme Court's decision constituted abandonment, and thereby created extraordinary circumstances sufficient to justify equitable tolling. *Busby*, for example, held that extraordinary circumstances existed where counsel failed to timely file his client's habeas petition despite having promised to do so, even though the petitioner hired him over a year before the AEDPA deadline, paid him $20,000, gave him his files and repeatedly inquired about his case. 661 F.3d at 1012. Likewise, *Spitsyn* held that an attorney's failure to file a habeas petition at all, despite being hired almost a year before the AEDPA deadline, was sufficiently egregious to constitute extraordinary circumstances, where Spitsyn contacted him three times and filed two complaints with the state bar. 345 F.3d at 798, 801.

Relatedly, we recognized in *Ramirez v. Yates* that, "'a prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter.'" 571 F.3d 993, 997 (9th Cir. 2009) (quoting *Woodward v. Williams*, 263 F.3d 1135, 1143 (10th Cir. 2001)). Although that case dealt with a pro se petitioner who should have received notification directly from the court, it is instructive here. If Gibbs had been proceeding pro se, he would have been entitled to notification from the court, and the court's failure to mail him notice of its denial of his PCR petition would have been an extraordinary circumstance justifying equitable relief. "Because [Figler] failed to notify

that the Florida Supreme Court had decided his case"; and "failed to communicate with his client over a period of years," despite Holland's repeated communications and requests that his lawyer do all of these things. 560 U.S. at 652.

the court of his intention to withdraw, [Gibbs] was deprived of the opportunity to proceed *pro se* and to personally receive docket notifications from the court." *Mackey*, 682 F.3d at 1253. Here, Gibbs's lack of actual notice was occasioned by the breach and abandonment of his attorney, but the result was the same: Gibbs did not know that the federal limitations clock had started ticking. Furthermore, as counsel had expressly promised Gibbs that he would forward him the court's notice of decision, it is as true here as it was in *Ramirez* that the petitioner's "ignorance of the limitations period was caused by circumstances beyond the party's control." *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1193 (9th Cir. 2001) (en banc).

These cases stand in stark contrast to *Towery*, where the attorney's alleged negligence did not rise to the level of abandonment or egregious misconduct because he actually represented his client and filed a habeas petition, albeit an imperfect one. *See* 673 F.3d at 936. We reasoned that Towery's attorney "diligently pursued habeas relief on Towery's behalf, although omitting a colorable constitutional claim from Towery's amended petition." *Id.* at 942. As the attorney continued as Towery's legal representative, even if his performance was inadequate, his conduct did not constitute abandonment of his client and did not justify the conclusion that extraordinary circumstances existed. *Id.*

In contrast, here, Figler failed to communicate with Gibbs "over a period of years," despite repeated efforts by Gibbs to engage him. *Holland*, 560 U.S. at 652. That Figler briefly reappeared after the Nevada State Bar forwarded him Gibbs's formal complaint and did bring Gibbs's PCR appeal does not excuse his prolonged absence and, most critically, his failure to inform Gibbs when the state PCR proceedings concluded.

Moreover, Figler went out of his way to *guarantee* Gibbs that he would update him about the case: "*Upon any receipt of notice from Supreme Court on your case we will forward it to you by mail*. Please send written correspondence to the above address if you have any questions or concerns." (Emphasis in original). Gibbs had questions and concerns and wrote to Figler several times at the address provided. But Figler did not respond, nor did he alert Gibbs that the Nevada Supreme Court had denied his appeal. In fact, Figler had moved to a new firm; his failure to provide Gibbs with an updated address hampered Gibbs's ability to communicate with him. Such egregious conduct is not analogous, as the Warden would have it, to the conduct in *Towery*, and is amenable to only one conclusion: Figler was not serving as Gibbs's agent "in any meaningful sense of that word." *Maples*, 132 S. Ct. at 923 (quoting *Holland*, 560 U.S. at 659 (Alito, J., concurring)) (internal quotation marks omitted).

The Warden contends that Gibbs "attempts . . . to lower the governing standard" because, overall, Gibbs's attorney was less negligent than Holland's. This argument misconstrues *Holland*. Nothing in that case suggests that the Court intended Holland's attorney's performance to serve as a floor for the extraordinary circumstances prong of equitable tolling. The only guidance the Court gave as to what would not satisfy that prong was that courts should exclude "garden variety claim[s] of excusable neglect" such as a "simple miscalculation." *Holland*, 560 U.S. at 651 (internal quotation marks omitted). That Figler may have acted less egregiously than Holland's counsel does not compel the conclusion that Figler's behavior was not egregious, or that his negligence was "garden variety."

We therefore conclude that Figler's egregious conduct amounted to client abandonment, such that Gibbs is not responsible for the fact that he did not learn of the Nevada Supreme Court's decision until December 14, 2010. *See Rudin v. Myles*, No. 12-15362, slip op. at 25 (9th Cir. Sept. 10, 2014).[7]   We next consider whether Figler's effective abandonment and Gibbs's resulting lack of notice of the Nevada Supreme Court's decision caused Gibbs to miss the federal filing deadline. *See Sossa v. Diaz*, 729 F.3d 1225, 1229 (9th Cir. 2013).

**2.**

By the time Gibbs learned that his state post-conviction proceeding was complete, the federal deadline had passed. Although it was technically possible for Gibbs to write to the Nevada Supreme Court daily to ask about the status of his state PCR petition, he had no obligation or reason to do so, given that he was represented and had, moreover, been specifically promised by his lawyer prompt notice of any decision.   "[This court has] granted equitable tolling in circumstances where it would have technically been possible for a prisoner to file a petition, but a prisoner would have

---

[7] We note a striking feature of *Rudin*: the very same attorney who abandoned Gibbs, Dayvid Figler, also abandoned Rudin. *See Rudin*, No. 12-15362, slip op. at 10, 24.   The court in *Rudin* found equitable tolling warranted on that basis, just as we do. *Id*. at 25. *Rudin*'s ultimate holding, that even tolling the entire period of Figler's involvement was not sufficient to render the federal habeas petition timely in that case, relied on its conclusion that Rudin was not diligent in pursuing her rights once counsel had been appointed to replace Figler. *See id*. at 27-28.   Because Gibbs was diligent during and after Figler's involvement in this case, our analysis is entirely consistent with *Rudin*.   Figler's abandonment of both Gibbs and Rudin is deeply troubling, to say the least.

likely been unable to do so." *Harris v. Carter*, 515 F.3d 1051, 1054 n.5 (9th Cir. 2008).**[8]** By failing to notify Gibbs of the Nevada Supreme Court's decision, Figler created a situation in which Gibbs, despite his diligence in tracking down Figler, was extremely unlikely, acting perfectly reasonably, to meet the AEDPA deadline. Our case law requires nothing more to establish that the extraordinary circumstance caused the failure to meet the federal deadline. *See Sossa*, 729 F.3d at 1236; *Harris*, 515 F.3d at 1054 n.5.

Thus, as a direct result of Figler's abandonment, Gibbs did not learn that the state PCR process was over until after the federal statute of limitations expired. This effective abandonment, resulting in lack of actual notice, satisfies the "extraordinary circumstances" prong of equitable tolling at least through December 14, 2010, when Gibbs learned of the Nevada Supreme Court's decision.

To establish that his petition was filed timely, Gibbs must demonstrate that Figler's conduct continued to stand in his way and prevent timely filing for at least an additional month, through January 15, 2011. We conclude that he has done so.

---

**[8]** "After *Holland*, we have continued to rely on our previous equitable tolling cases in which we held that equitable tolling is available only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time and the extraordinary circumstances were the cause of the prisoner's untimeliness." *Sossa*, 729 F.3d at 1229 (alterations, emphasis and internal quotation marks omitted). Consistent with *Holland*, our cases have applied this 'impossibility' standard leniently, rejecting a literal interpretation. *See id.* at 1236; *Harris*, 515 F.3d at 1054 n.5; *Lott v. Mueller*, 304 F.3d 918, 924–25 (9th Cir. 2002); *see also Rudin*, No. 12-15362, slip op. at 23 (applying impossibility standard to a circumstance in which timely filing was not literally impossible).

First, until Gibbs definitively terminated the attorney-client relationship in February 2011, Gibbs may reasonably have believed that Figler was going to assist him in federal court. Gibbs intended to file a federal habeas petition and relied on Figler for advice as to how to do so despite the timeliness bar he now faced, indicating that Figler may have given Gibbs reason to believe that Figler would represent him in federal proceedings. The same day Gibbs learned of the Nevada Supreme Court's decision, he wrote to Figler, asking "what do I do now[?]" and requesting that Figler "please address [his] concerns with simple communication." It was not until Figler *again* failed to respond that Gibbs sent Figler correspondence officially terminating Figler as his representative and demanding return of his legal files.

Second, even if Gibbs did not reasonably believe that Figler's representation would continue, an attorney who ceases to represent a client has certain continuing obligations to his client, including taking "steps to the extent reasonably practicable to protect a client's interests." Nev. R. Prof. Conduct 1.16(d). Figler therefore should have been protecting Gibbs's interests, including preserving his right to seek federal habeas review of his conviction. Not only did Figler *not* protect Gibbs's right to have his conviction reviewed, Figler's failure to notify Gibbs of his change in firms, lack of response to Gibbs's inquiries, and retention of Gibbs's legal files, obstructed Gibbs's ability to timely file his petition. As to the last factor, "we have previously held that a complete lack of access to a legal file may constitute an extraordinary circumstance, and that it is 'unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period without access to his legal file.'" *Ramirez*, 571 F.3d at 998 (quoting *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027–28

(9th Cir. 2005)). And the Nevada professional rule which required Figler to take "steps to the extent reasonably practicable to protect a client's interests," indicates that one such step may be "surrendering papers to which . . . the client is entitled." Nev. R. Prof. Conduct 1.16(d).

The Warden rejects the lack of files as a relevant consideration, pointing to evidence that Figler sent Gibbs copies of the state post-conviction briefs in May 2010. But, as Gibbs's federal habeas petition indicates, the claims in the federal habeas petition are not identical to the post-conviction claims Gibbs pursued in state court. For instance, the federal petition includes a due process claim not present in the state post-conviction petition.

Moreover, while Gibbs knew that the Nevada Supreme Court had denied his petition, he did not know if they did so in a reasoned decision. Promptly after receiving the docket reflecting that his petition was denied, Gibbs wrote to the Nevada Supreme Court to request copies of its order affirming the denial of his petition. It is not clear from the record when the Court responded by sending a copy of its order to Gibbs. However, until it did so, Gibbs could not realistically file a federal petition. Thus, Figler's abandonment continued to affect Gibbs for this reason, as well.

For these reasons, we conclude that Gibbs has established that Figler's abandonment was an extraordinary circumstance obstructing his ability to file his federal petition through at least January 15, 2011. We next consider whether Gibbs has acted with diligence in attempting to bring this habeas petition to federal court.

## B.  Diligence

*Holland* reaffirmed that the standard of diligence required of a petitioner seeking equitable tolling is "reasonable," not "maximum feasible" care.  560 U.S. at 653 (internal quotation marks omitted).  "[R]easonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief." *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011).  Rather, "[i]t requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Id.*

The district court found that Gibbs was not sufficiently diligent to merit equitable tolling, because Gibbs: (1) "could have, but did not, contact" the Nevada Supreme Court regarding his case between May and December of 2010; (2) "could have, but apparently did not, begin to prepare his federal habeas petition once he received copies of his post-conviction appellate briefs" in May of 2010; (3) unnecessarily "waited two months" after learning that his appeal had been denied before requesting that Figler return his files; (4) "could have, but apparently did not, have his sister pick up his files from the attorney's office" in less than three weeks from his request; and (5) could have filed his habeas petition sooner after learning of the state court decision.  We address each reason in turn.

1.  As to the first point, Gibbs reasonably relied on his attorney during this period, and so was adequately diligent. *Holland*, *Maples*, *Spitsyn* and *Busby* all illustrate the basic

principle that a petitioner's reasonable reliance on an attorney should not prejudice his opportunity to file a habeas petition.[9]

In *Busby*, where the attorney promised — and then failed — to file a habeas petition on his client's behalf, and the client relied on his absent attorney for four years before eventually filing a late petition pro se, this court held the petitioner's reliance reasonable. 661 F.3d at 1009–10, 1015. "Even had [the petitioner] known his attorney had not handled a habeas petition before, his reliance would still have been reasonable," the court held. *Id.* at 1015. "[A] reasonable litigant in [the petitioner's] situation who is represented by experienced counsel, if asked about the status of his or her lawsuit, would be justified in replying, 'My lawyer is handling it.'" *Id.* So, too, here.

After Figler wrote to him in May 2010, Gibbs wrote to Figler three times before contacting the Nevada Supreme Court in December of that year. He had no reason to contact the court earlier. Figler had assured him that he would perform the simple task of forwarding the Nevada Supreme Court's notice upon receipt. And although Figler had abandoned Gibbs for periods before, he had also stepped up to the plate in time to fulfill his legal duties when contacted by the State Bar. Moreover, it was Figler's ethical duty to take "steps to the extent reasonably practicable to protect [Gibbs's] interests" if he had ceased representing him, Nev. R. Prof. Conduct 1.16(d), and, if so, to notify the court so that the court would send its disposition to Gibbs rather than Figler, Nev. R. App. P. 3C(b)(3). *See Mackey*, 682 F.3d at 1253. In light of these circumstances, we have no trouble

---

[9] Of course, reliance on an attorney must be "reasonable." *See LaCava v. Kyler*, 398 F.3d 271, 277–78 (3d Cir. 2005).

concluding that Gibbs acted with reasonable diligence in discovering, albeit after the untolled federal filing deadline had run, the Nevada Supreme Court's denial of his petition.

2.  The notion that Gibbs should have prepared his own habeas petition between June and December 2010, even while he believed his Nevada Supreme Court case was still pending and many of his federal claims therefore unexhausted, is no stronger.  To expect Gibbs to have done so improperly raises the standard from "reasonable" to "maximum feasible" diligence. *Holland*, 560 U.S. at 653 (internal quotation marks and citations omitted).

Moreover, the Warden is mistaken that, "[i]t would have been a ten-minute exercise" for Gibbs to simply slap a new coversheet on either his own pro se brief from 2006 or Figler's brief to the Nevada Supreme Court "and submit it as a § 2254 petition."  Even if Gibbs had access to these materials and was "fully informed of the precise legal issues to be raised in a 2254 petition," as the Warden contends, converting a state court brief to a federal habeas petition is not an automatic undertaking.  Besides the obvious necessity of removing references to state case law and authority, and the federal requirement of alleging exhaustion of state remedies, it appears that local rules required Gibbs, now a pro se litigant, to file his petition on a form provided by the district court.    D. Nev. LSR V.3-1, *available* at www.nvd.uscourts.gov (last visited 7/30/2014).  In light of the changes of form and substance Gibbs had to make to convert his state pleadings to a proper federal petition, the Warden's argument is inapt.

In sum, *Busby* specifically rejected the suggestion that a "represented petitioner [should] proceed on a dual track with

his own petition." 661 F.3d at 1014. The Warden offers no good reason why this case compels a shift in course.

3. Nor, for reasons already discussed, was it unreasonable for Gibbs to wait two months before demanding Figler return his files. Gibbs wrote to Figler the day he learned his PCR appeal had been denied, asking for counsel. Gibbs begged Figler to respond and assist him; when Figler did not do so, Gibbs terminated him and insisted on the return of his files.

4. & 5. Finally, the Warden contends that Gibbs is not entitled to equitable tolling, because it took his sister three weeks to pick up his files from Figler and because, by taking so long to file his federal petition after learning of the Nevada Supreme Court's decision, he failed to act diligently. We disagree with this assessment based on the undisputed facts in the record, and also because of the outsized importance the Warden attributes to Gibbs's actions after the extraordinary circumstance occasioned by Figler's misconduct was lifted.

*Holland* did stress the petitioner's remarkable diligence in filing his habeas petition the day after he learned that he had missed the AEDPA deadline. 560 U.S. at 639. Similarly, in *Busby*, the court deemed the petitioner diligent where, after four years of reliance on his attorney and a six-month delay in recovering his files, he submitted his habeas petition in ten days. 661 F.3d at 1015. In *Spitsyn*, the court remanded on the question of diligence because it was not clear why the petitioner waited over 170 days after receiving his files to submit his petition. 345 F.3d at 802. And in *Lott*, the court remanded on the extraordinary circumstances prong, but noted that the petitioner might have been able to file within the statute of limitations despite the obstacle to filing. 304 F.3d at 923. Finally, in *Pace*, the Supreme Court denied

the petitioner's request for equitable tolling, in part on the basis of a five-month delay in filing the federal petition *after* the state post-conviction proceedings became final. 544 U.S. at 419.

We note some tension between examining a petitioner's diligence *after* the lifting of an obstacle to timely filing, and the stop-clock rule established by an en banc panel of this Court in *Socop-Gonzalez*, 272 F.3d at 1195–96. *Socop-Gonzalez* rejected the approach to equitable tolling wherein courts consider whether a claimant should have been expected to file his lawsuit within the amount of time left in the statute of limitations, after an extraordinary circumstance barring filing was lifted. *Id.* Instead, "the event that 'tolls' the statute simply *stops the clock* until the occurrence of a later event that permits the statute to resume running." *Id.* at 1195.

The *Socop-Gonzalez* rule is fully in line with AEDPA's aim of encouraging the exhaustion of state remedies without eliminating federal habeas relief. *See Holland*, 560 U.S. at 648–49. Requiring a degree of diligence *after* an extraordinary circumstance ceases when that degree of diligence would not otherwise have been required risks infringing the statutory right to habeas corpus review; it also "arguably usurps congressional authority . . . by substituting [the court's] own subjective view of how much time a plaintiff reasonably needed to file suit." *Socop-Gonzalez*, 272 F.3d at 1196. *Socop-Gonzalez*'s "stop-clock" holding remains the law in our circuit and applies here. That rule prohibits courts from constraining litigants to a judicially imposed filing window, and warns against imposing additional diligence requirements on recipients of equitable tolling.

Courts may, however, consider a petitioner's diligence, after an extraordinary circumstance has been lifted, as one factor in a broader diligence assessment. *See, e.g.*, *Pace*, 544 U.S. at 419. By requiring those seeking equitable tolling to show they exercised reasonable diligence, we "ensure that the extraordinary circumstances faced by petitioners . . . were the cause of the tardiness of their federal habeas petitions." *Lampert*, 465 F.3d at 973. "'[I]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file, after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken.'" *Spitsyn*, 345 F.3d at 802 (alteration in original) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

Because it is most relevant to the causation question, we are *primarily* concerned with whether a claimant was "diligent in his efforts to pursue his appeal *at the time his efforts* were being thwarted." *Lampert*, 465 F.3d at 970–71 (emphasis in original). In other words, diligence *during* the existence of an extraordinary circumstance is the key consideration. Also relevant is whether petitioners "pursued their claims within a reasonable period of time *before* the external impediment . . . came into existence." *Id.* at 972; *see also Pace*, 544 U.S. at 419.

Diligence *after* an extraordinary circumstance is lifted may be illuminating as to overall diligence, but is not alone determinative. This conclusion draws not only on the obvious inference that diligence after the fact is less likely to be probative of the question of whether the extraordinary circumstance caused the late filing, but also from *Socop-Gonzalez*'s recognition that courts should not take it upon

themselves to decide how much time a claimant needs to file a federal case.

Examining the record in view of the weight afforded these considerations, we observe that Gibbs's diligence dates back for a decade. He sought out counsel, appealed pro se the denial of his state PCR petition on timeliness grounds, wrote to his attorneys frequently regarding his appeals, and when necessary, wrote directly to the State Bar and the Nevada Supreme Court. The Warden refers to Gibbs as "hysterical[]" because, at one point in 2008, he sent four letters to Figler over several weeks. Given the circumstances — Gibbs's awareness that he stood to lose his opportunity to challenge a life sentence — this behavior is more aptly characterized as "diligent."

Most importantly, Gibbs was diligent during the time that Figler's abandonment and failure to inform him of a critical development in his case created an extraordinary circumstance keeping him from filing a timely federal petition. One month after Figler wrote to assure Gibbs all was well with his case, Gibbs wrote to Figler, asking him to supplement the briefing with new case law and to stay in touch. Several months later Gibbs wrote to Figler again, asking why Figler did not respond to his last letter and expressing a desire to discuss strategy for oral argument before the Nevada Supreme Court. Gibbs also reached out to both the State Bar and state Supreme Court.

After he learned of the state court decision, Gibbs immediately wrote to Figler. He promptly asked the Nevada Supreme Court for a copy of the order denying his PCR appeal. After he did not hear back from Figler, he fired him and demanded return of his files. And even without knowing

anything about what went on during the three weeks it took Gibbs's sister to retrieve the files from Figler, three weeks is a reasonable time in which to have contacted Figler, ascertained his availability, and arranged to pick up the files.

After terminating Figler and receiving his files, Gibbs filed a pro se habeas petition in sixty-five days' time. In *Espinoza-Matthews*, we granted equitable tolling because the petitioner "had only slightly over a month with his legal file to try to prepare a proper petition." 432 F.3d at 1028. That Gibbs took slightly more than two months to prepare his federal habeas petition — his "single opportunity for federal habeas review of the lawfulness of his imprisonment" — after diligently pursuing his rights for ten years, does not undercut his overall record of diligence. *Holland*, 560 U.S. at 653.

Taken as a whole, the record provides ample evidence of Gibbs's persistent diligence over a period of ten years, often in the face of utter disregard by those charged with representing him. We therefore conclude that Gibbs acted with reasonable diligence both before and after learning of the Nevada Supreme Court's decision, thereby satisfying the first prong of the *Holland* equitable tolling inquiry.

## III.

Gibbs's counsel did not inform him that state post-conviction proceedings had ended, even though counsel had pledged to do so, even though Gibbs wrote to his counsel repeatedly for updates, and even though time in which to file a federal habeas petition was swiftly winding down. As a direct result, Gibbs did not learn that the time for him to file his federal petition had begun until the time was over. We conclude that his attorney's misconduct was an extraordinary

circumstance which caused Gibbs's inability to timely file his federal petition.  We are also satisfied that Gibbs exercised reasonable diligence in pursuit of his post-conviction rights.

For these reasons, the judgment of the district court is **REVERSED** and the matter **REMANDED** for proceedings not inconsistent with this opinion.