Filed 4/1/15  Lefkowitz v. Wirta CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GARY LEFKOWITZ, | B250177 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC435862) |
| v. | |
| RAY WIRTA et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County.  Ruth Ann Kwan, Judge.  Affirmed.

Gary Lefkowitz, in pro. per., for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Robert J. Stumpf, Jr. and Martin D. White for Defendants and Respondents.

Gary Lefkowitz (appellant) appeals from judgments of dismissal entered after the trial court granted two motions disposing of appellant's complaint against defendants Pinnacle Realty Management Company (Pinnacle), John Goodman (Goodman), and TRIAD/KEG, LLC (Triad) (collectively "respondents"). The first motion was a motion for judgment on the pleadings filed by Pinnacle and Goodman. The second motion was a demurrer filed by Triad, which the trial court sustained without leave to amend.

The issues raised in the motions were addressed in a previous appeal in this case (*Lefkowitz v. Wirta* (Jan. 15, 2014, B232628) [nonpub. opn.].)[1] In the previous appeal, this court addressed rulings sustaining three demurrers filed by numerous other defendants in this case.[2] We held that all of appellant's causes of action are time-barred on the face of appellant's first amended complaint (FAC).[3] The same FAC is at issue here.[4]

Based on our prior opinion in this case, we find that appellant is collaterally estopped from arguing that his claims against these respondents are not time-barred. We therefore affirm the judgments.

---

[1]    See California Rule of Court, rule 8.1115(b)(1).

[2]    Appellant's complaint sets forth allegations against 43 defendants (collectively "defendants"), 34 of whom were respondents in the prior appeal. The respondents in the prior appeal categorized themselves into three groups: the CBRE respondents; the GE respondents; and the Triad respondents. None of the respondents in the current appeal was a party to the prior appeal. To avoid confusion, the parties to the prior appeal will be referred to as the CBRE defendants, the GE defendants, and the Triad defendants.

[3]    Appellant filed a petition for review in the California Supreme Court. On April 9, 2014, the Supreme Court denied the petition. On April 14, 2014, this court issued its remittitur.

[4]    Although appellant filed a second amended complaint on June 12, 2012, the amendment merely corrected Goodman's first name.

## FACTUAL AND PROCEDURAL BACKGROUND

**Background facts**

Our prior opinion in this case sets forth the factual background in detail, and we briefly summarize it here. In short, appellant alleges that he was the founder of Citi Equity Group, Inc., and CEG, Inc. From 1984 to 1994, appellant and CEG formed approximately 250 limited partnerships in which appellant and Citi Equity Group or CEG were the general partners. The partnerships held legal or beneficial ownership of thousands of apartment units comprising hundreds of individual apartment buildings in over 20 states. In 1994, appellant was indicted and Citi Equity Group was placed into an involuntary bankruptcy proceeding. Appellant was later convicted on multiple counts of "mail and wire fraud, managing a continuing financial crimes enterprise, defrauding an agency of the United States, aiding in the preparation of false tax returns, making a false statement in connection with a bankruptcy case, and obstruction of justice." (*United States v. Lefkowitz* (8th Cir. 1997) 125 F.3d 608, 612.) Lefkowitz served a prison term with a release date of October 2014.

Appellant alleges that in 1994 he signed a "Confidentiality and Non Circumvention Agreement" (CNCA) with an affiliate of the Koll Company (Koll), which bound Koll and its affiliates, subsidiaries, assigns, successors, parents, shareholders and others. Through the CNCA, the parties expressed a nonbinding intention to enter into a relationship in order to develop a program to acquire the interests of the limited partners in the partnerships and to sell such interests and/or the low income housing projects owned by the partnerships to new purchasers. The document also confirmed Koll's agreement that all of the information relating to the business structure of the limited partnerships and the methods of purchasing and reselling the limited partnerships constitutes a trade secret of appellant; that Koll and its affiliates would not disclose such trade secrets nor use any such secrets except as contemplated in the agreement; and that Koll and its affiliates would indemnify and hold appellant harmless from any loss, damage, cost or expense incurred by appellant as a result of any breach of the agreement.

Appellant alleges he shared confidential information about the partnerships with Koll in reliance on the agreement.

Appellant alleges that Koll and its affiliates misused confidential information he provided under the CNCA to take control of the limited partnerships and related assets, obtain income from them, and divest appellant of his partnership interest and income.

**Initial pleadings**

Appellant's original complaint against the defendants was filed on April 14, 2010. In the FAC, filed in October 2010, appellant alleged causes of action against the defendants for breach of contract, fraud, violation of the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.), breach of confidential relationship, breach of fiduciary duty, tortious interference with contract, tortious interference with prospective business advantage, declaratory relief, a civil Racketeer Influenced and Corrupt Organizations Act claim (18 U.S.C. § 1961 et seq.), and fraudulent transfer.

On August 25, 2010, the CBRE defendants demurred on the grounds that appellant's claims were time-barred and uncertain. On October 7, 2010, appellant responded to the demurrer by filing the FAC.

On November 17, 2010, the CBRE defendants again demurred, challenging the timeliness of appellant's lawsuit. On the same date, the Triad defendants demurred on the same grounds. Appellant opposed the demurrers. On January 4, 2011, the trial court issued a ruling sustaining the demurrers on the ground that appellant's claims are time-barred on the face of the complaint. On February 15, 2011, the trial court entered judgment in favor of the CBRE defendants and the Triad defendants.

On March 16, 2011, the GE defendants filed their demurrer challenging the timeliness of appellant's lawsuit. The GE defendants argued that appellant admitted that he discovered his alleged causes of action no later than 2003, and that his 2010 complaint was therefore time-barred as to all causes of action. On April 14, 2011, the trial court sustained the GE defendants' demurrer in its entirety without leave to amend. On May 9, 2011, the trial court entered judgment of dismissal in favor of the GE defendants.

4

**The first appeal in this case**

On April 22, 2011, appellant appealed from the final judgments entered in favor of the CBRE defendants and the Triad defendants, and from the ruling sustaining the GE defendants' demurrer without leave to amend. This court deemed the order sustaining the GE defendants' demurrer to incorporate an order of dismissal, and considered the rulings on all three demurrers.

On January 15, 2014, this court issued our opinion in the first appeal. We concluded that all causes of action asserted by appellant are time-barred on the face of the FAC. We held that the allegations of the FAC show that appellant had reason to suspect, and in fact did suspect, facts which put him on inquiry notice of his claims as early as 1999. However, even assuming that those suspicions were later dismissed by reassurances from a member of Koll Equity Group (KEG), we found that the allegations of the FAC show that appellant was on notice of his claims no later than 2003, when he was informed that he had been removed from all the limited partnerships and that his interest in each of the partnerships had been terminated by the bankruptcy court as a condition of the GE defendants' investment in the limited partnerships. In June 2003, appellant wrote a letter to several individuals confirming his understanding that KEG and Triad were taking the position that appellant was no longer a partner in any of the partnerships from which he had been removed as general partner. Appellant also sent an early draft of this lawsuit to certain defendants. We held that, as of June 2003, appellant was on notice of his claims and had an affirmative obligation to discover the facts supporting his causes of action (citing *Norgart v. Upjohn Company* (1999) 21 Cal.4th 383, 398).

In reaching this conclusion, we explained that the causes of action in the FAC are generally subject to two, three, or four year statutes of limitation. For each cause of action, we concluded that appellant's April 2010 filing was untimely. We rejected appellant's theories that the statutes of limitation should be tolled due to the delayed discovery rule, equitable tolling, estoppel or equitable estoppel, the doctrine of fiduciary

5

relationship/duty to speak, the continuing violation rule, and the last overt act of a conspiracy rule.

One of appellant's main arguments in support of application of the delayed discovery rule was that he continued receiving K-1 forms through April 15, 2005, and reasonably believed that KEG had rethought its position because he would not be receiving K-1s if he was not still a partner. Appellant claimed it was not until April 15, 2006, when he did not receive any K-1 forms, that he knew or could have known through the exercise of reasonable diligence that he had been damaged. We rejected this argument, finding that the receipt of the K-1 forms did not undo the running of the statute of limitations. We came to this conclusion for two reasons: first, an individual may not rely on false information contained in a K-1 form. (*David v. Commissioner* (2d Cir. 1995) 43 F.3d 788, 789-790). In addition, appellant was specifically informed in October 2003 that the K-1 forms he was receiving were being sent to him in error. He had been told that the staff at KEG and Triad had their "heads so far up their ass that they did not know what day it is," and that the accounting and record keeping at these partnerships was a mess. (*Lefkowitz v. Wirta, supra*, B232628, pp. 10, 22.) Under the circumstances, appellant could not delay the running of the statute of limitations based on his receipt of these K-1 forms.

Significantly, we noted that in his reply brief, appellant informed this court that he recently learned that certain defendants listed him as a partner as recently as 2008, although appellant did not receive the relevant K-1 and IRS 1065 forms. We acknowledged this new allegation but found that it was not significant to our analysis:

> "In his rely brief, appellant notes that he recently learned that certain respondents -- it is unclear which ones -- listed him as a partner as recently as 2008, although appellant did not receive the relevant K-1 and IRS 1065 forms. This information is irrelevant to the question of when appellant's causes of action accrued. The accrual of appellant's causes of action occurred when he had notice or information of circumstances to put a reasonable person on inquiry notice of his claims. Information outside of appellant's knowledge has no bearing on this question."

(*Lefkowitz v. Wirta, supra*, B232628, p. 17, fn. 10.)

**The motions at issue in this appeal**

After the first appeal in this matter was filed, but before the opinion was issued in January 2014, Pinnacle and Goodman filed their motion in the trial court for judgment on the pleadings (April 8, 2013) and Triad filed its demurrer (May 29, 2013). Through these motions, respondents argued that the causes of action against them are barred by the relevant statutes of limitation. The parties noted that the trial court had previously sustained demurrers without leave to amend on the ground that the allegations in the FAC were time-barred.

*Pinnacle and Goodman's motion for judgment on the pleadings*

Pinnacle and Goodman's motion was set to be heard on May 7, 2013. On April 30, 2013, appellant filed a request to continue the May 7, 2013 hearing to May 29, 2013, to give him an opportunity to view his California Westlaw CD-ROMs (CDs), which prison staff had not made available to him. Pinnacle and Goodman filed a reply, stating that appellant's request for more time was without merit because the issues in Pinnacle and Goodman's motion were identical to those presented in prior demurrers, which the trial court sustained after extensive briefing and argument.

On May 2, 2013, appellant filed a supplemental response to the motion for judgment on the pleadings. Appellant noted that he had previously made a request to continue the May 7, 2013 hearing to May 29, 2013, due to prison staff availability to monitor the court call and the unavailability of appellant's Westlaw CDs. Appellant also noted that there was a material development in the case. On April 26, 2013, appellant had received information from the United States Government that he had been listed as a partner on K-1 forms for at least 13 limited partnerships and perhaps more. Appellant speculated that the K-1 forms would have been sent to him on April 15, 2008, making 2009 the first year that he would not have been listed as a partner. Appellant requested that the court allow him to file a second amended complaint no later than May 20, 2013, alleging these newly discovered facts.

The hearing on Pinnacle and Goodman's motion for judgment on the pleadings went forward on May 7, 2013. The trial court presented a detailed tentative decision

7

finding appellant's causes of action to be time-barred on the face of the FAC. In its minute order, the trial court stated that the motion was unopposed. The tentative ruling was adopted as the final ruling of the court. The court noted that it did not receive appellant's request to continue the hearing until the late afternoon, after the motion was heard. The trial court did not mention appellant's request for permission to file a second amended complaint.

Pinnacle and Goodman were dismissed from the lawsuit on June 5, 2013, pursuant to Code of Civil Procedure section 581, subdivision (f)(1). On July 18, 2013, appellant filed a notice of appeal from that trial court order.

### Triad's demurrer

Triad's demurrer was set for hearing on August 13, 2013. Appellant filed an opposition to the demurrer on August 6, 2013. In his opposition, appellant argued that his complaint was not barred by any statute of limitations since it alleged that K-1 IRS forms continued to be sent to him until at least 2005. Appellant also argued that he now had proof that 1065 returns and K-1s listing him as partner were filed in 2006, 2007 and 2008.

On August 13, 2013, the trial court sustained Triad's demurrer without leave to amend. The trial court's tentative ruling became the final order of the court. In the tentative ruling, the trial court noted that appellant failed to timely file and serve his opposition. The trial court held that according to appellant's allegations, the statute of limitations on appellant's claims began to run in 2003 when appellant received a letter stating that appellant had no interest in the partnerships and subsequently sent copies of a draft complaint in this lawsuit to certain defendants. The trial court held that appellant failed to allege sufficient facts supporting application of the delayed discovery, fraudulent concealment, and equitable tolling doctrines.

On August 22, 2013, appellant filed his notice of appeal from the order sustaining the demurrer of Triad without leave to amend and dismissing the action with prejudice as to Triad per the order dated August 13, 2013.

8

## DISCUSSION

### I. Collateral estoppel bars relitigation of the statute of limitations issue

Collateral estoppel applies to bar relitigation of an issue that was previously litigated. There are three essential elements of the doctrine of collateral estoppel: "(1) the party against whom collateral estoppel is asserted was a party in the prior proceeding; (2) the issue decided at the previous proceeding is identical to that which is sought to be relitigated; and, (3) the previous proceeding resulted in a final judgment on the merits." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 361-362, fn. omitted.)[5]

The doctrine of collateral estoppel bars appellant from relitigating the statute of limitations issue in this court. The two motions at issue in this appeal were decided on the issue of timeliness. That issue was analyzed in detail as to each cause of action set forth in the FAC and was previously decided by this court, in a proceeding which resulted in a final decision on the merits. Under the circumstances, we find that the prior adjudication of the statute of limitations issue as to each cause of action in the FAC constitutes collateral estoppel as to that issue, and appellant is precluded from pursuing it here.[6]

---

[5]      We consider the prior appeal in this case to be a prior proceeding because it involved different parties. (*Darr & Newman v. VRL International* (2005) 129 Cal.App.4th 482, 489 ["'Final decisions or rulings . . . in various independent stages of a proceeding, are governed by the distinct principle of res judicata'"]; see also *Lucido v. Superior Court, supra*, 51 Cal.3d at p. 341, fn. 3 ["The doctrine of collateral estoppel is one aspect of the concept of res judicata"].)

[6]      We note that this includes any arguments that appellant was listed as a partner on certain K-1 forms as late as 2008. As set forth above, that argument was addressed in the prior appeal and will not be addressed again in this opinion. In addition, even if we had not previously addressed the alleged existence of K-1s listing appellant as a partner as late as 2008, this evidence would not serve to prevent the application of collateral estoppel. "An exception to collateral estoppel cannot be grounded on the alleged discovery of more persuasive evidence. Otherwise, there would be no end to litigation." (*Evans v. Celotex Corp.* (1987) 194 Cal.App.3d 741, 748.)

9

**II. Appellant's due process and equal protection claims do not warrant reversal**

Appellant presents several claims regarding the fairness of the proceedings below. None of these claims changes the result of this appeal.

### A. *Appellant's request to continue the May 7, 2013 hearing*

Appellant's first argument is that the trial court violated his rights by going forward with the hearing on the motion for judgment on the pleadings without appellant's personal or telephonic appearance, and by failing to rule on appellant's motion that the hearing be continued to May 29, 2013, so that appellant could participate via a telephonic appearance at that time.

The court's minute order indicates that the court did not receive appellant's filing until the late afternoon, after the motion was heard. At that point the hearing had been held and the ruling had been made. Appellant did not file a motion for reconsideration to request that the court reconsider its earlier ruling, nor did he file any other objection to the trial court's ruling that the motion was unopposed. Under the circumstances, we find that no error occurred.

Appellant relies on *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, in which the court held that "[a] prisoner may not be deprived, by his or her inmate status, of meaningful access to the civil courts." (*Id.* at p. 792.) In *Wantuch*, the plaintiff was subjected to terminating sanctions because of his failure to appear at a status conference and hearing on an order to show cause for failure to prosecute. (*Id.* at p. 791.) Here, appellant was not subject to sanctions for failing to appear. Instead, the motion at issue was heard and granted on the merits. Thus, the *Wantuch* case is not applicable.

Appellant's arguments are all based on the faulty premise that the trial court read and considered appellant's filings before the hearing. The trial court made it clear on the record that it did not do so. Appellant cites no law suggesting that the trial court was required to un-do its previous order in the absence of a motion to reconsider.

In addition, appellant has cited no law suggesting that there is a due process right to be heard at oral argument on motions in the trial court, or that such errors cannot constitute harmless error. In the context of this case, we find that any error was harmless,

10

as appellant is now collaterally estopped from relitigating the issues set forth in the motion for judgment on the pleadings.

### B. Denial of access to Westlaw materials

Appellant argues that the trial court committed constitutional error by entering its orders on both the May 7, 2013 and August 13, 2013 motions when appellant had put the court on notice that appellant had been denied access to his Westlaw CDs containing California law. Appellant cites *Espinoza-Matthews v. California* (9th Cir. 2005) 432 F.3d 1021, 1027-1028 (*Espinoza*) in support of this claim. *Espinoza* involved a prisoner who was denied access to his legal file in order to timely file his federal habeas petition under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[7] The Ninth Circuit determined that because he could not obtain his legal papers for nearly 11 months, the prisoner was entitled to tolling of the statute of limitations.

*Espinoza-Matthews* does not concern the denial of access to Westlaw. Appellant cites no law suggesting that an inmate has the right to access Westlaw CDs.[8] *People v. Partner* (1986) 180 Cal.App.3d 178, 185-186, discussed a prisoner's denial of access to the jail law library. The court concluded that the trial court did not abuse its discretion in

---

[7] The majority of the cases cited by appellant involve the tolling of the one-year statute of limitations to file a federal habeas petition under the AEDPA. (See *Lott v. Mueller* (9th Cir. 2002) 304 F.3d 918 (*Lott*); *Ramirez v. Yates* (9th Cir. 2009) 571 F.3d 993 (*Ramirez*); *Holland v. Florida* (2010) 560 U.S. 631.) None involves continuances in the context of motions for judgment on the pleadings or demurrers.

[8] *Lott* also involved the tolling of a statute of limitations under the AEDPA where a prisoner was denied access to his legal file -- not Westlaw. (*Lott, supra*, 304 F.3d at pp. 922-926.) Similarly, in *Ramirez*, the Ninth Circuit determined that denial of complete access to the prisoner's legal file may warrant equitable tolling of the statute of limitations to file his federal habeas petition under the AEDPA. However, the court had "little difficulty determining that Ramirez is not entitled to equitable tolling from July 11, 2003 through October 1, 2003, simply because he remained in administrative segregation and had limited access to 'the law library [and] copy machine.' Ordinary prison limitations on Ramirez's access to the law library and copier (quite unlike the denial altogether of access to his personal legal papers) were neither 'extraordinary' nor made it 'impossible' for him to file his petition in a timely manner." (*Ramirez, supra*, 571 F.3d at p. 998.)

denying the appellant's request for a court order allowing him to use the jail law library because he had an attorney. The court stated "an inmate has no right to use of a law library except as necessary to insure access to the courts." (*Id.* at p. 185.) The case does not suggest that the trial court erred in declining to continue the motions at issue here due to appellant's inability to access Westlaw.

In addition, appellant has cited no law suggesting that there is a constitutional right to access Westlaw during motion practice in the trial court. In the context of this case, we find that any such error was harmless in any event, as appellant is now collaterally estopped from relitigating the timeliness issues set forth in the motion for judgment on the pleadings and the demurrer.

### C. *Failure to consider appellant's oppositions*

Appellant claims that the trial court erred in failing to consider his oppositions. He argues that a court's decision not to consider late-filed papers may not be exercised arbitrarily, citing *Kapitanski v. Vons Grocery Co.* (1983) 146 Cal.App.3d 29, 32-33.) In addition, it is an abuse to refuse relief if excusable neglect is shown. (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 30.)

Appellant has failed to show reversible error. The court made it clear that it had not yet received appellant's filing at the time of its ruling on May 7, 2013. Appellant made no motion for relief or request for reconsideration. Under the circumstances, there was no abuse of discretion.

As to the opposition filed prior to the August 13, 2013 hearing, the trial court noted that the document had not been timely filed and served. However, the trial court did not strike the document or otherwise indicate that it intended to disregard the document. Instead, the motion was granted based on Triad's arguments regarding the statutes of limitation on each of appellant's causes of action. As set forth above, appellant is collaterally estopped from religitating those issues. No error occurred.

### D. *The trial court's failure to grant leave to amend*

In his supplemental response to Goodman and Pinnacle's motion for judgment on the pleadings, appellant requested leave to amend the FAC to allege new facts showing

that he was listed as a partner on certain K-1 forms as late as 2008. The trial court's implicit denial of appellant's motion to amend his complaint is reviewed for abuse of discretion. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612.)[9]

No error occurred. As explained in our prior opinion in this case, the discovery that appellant's name was listed on certain K-1 forms as late as 2008 does not change the statute of limitations analysis in this case, where it is clear on the face of the pleadings that appellant was aware of his claims in 2003 at the latest.

## DISPOSITION

The judgments are affirmed. Respondents are awarded their costs of appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:

_____, P. J.
BOREN

_____, J.
ASHMANN-GERST

---

[9] The trial court did not make a formal ruling on appellant's request for leave to amend. However, as appellant points out, he noted in both his opposition to the motion for judgment on the pleadings and in his opposition to the demurrer that he had recently discovered new facts suggesting that the lawsuit was timely filed. Under the circumstances, the court's actions included an implicit denial of appellant's request. (*Galligan v. City of San Bruno* (1982) 132 Cal.App.3d 869, 875-876.)